The State of Ohio, Appellee, *v.* Sims, Appellant.

(No. 70-78—Decided July 7, 1971.)

*Mr. Melvin G. Rueger*, prosecuting attorney, and *Mr. Leonard Kirschner*, for appellee.

*Messrs. Rendigs, Fry, Kiely & Dennis*, and *Mr. William P. Schroeder*, for appellant.

STERN, J. The issue presented by this appeal is whether a Court of Appeals may dismiss a motion for leave to appeal by an indigent convicted defendant without first determining whether he was notified of his right to appeal and his right to court-appointed counsel for such an appeal.

The right to an appeal in state courts is not an absolute right. In *McKane* v. *Durston* (1894), 153 U. S. 684, 687, it was stated that:

" * * * An appeal from a judgment of conviction is not a matter of absolute right, independently of constitutional or statutory provisions allowing such appeal. A review by an appellate court of the final judgment in a criminal case, however grave the offense of which the accused is convicted, was not at common law and is not now a necessary element of due process of law. It is wholly within the discretion of the state to allow or not to allow such a review. A citation of authorities upon the point is unnecessary."

However, where the opportunity to appeal is granted, as in Ohio (R. C. 2953.05), it has been settled that an indigent convicted defendant cannot be deprived of this opportunity by his impecunious condition. *Griffin* v. *Illinois*

(1956), 351 U. S. 12; *Burns* v. *Ohio* (1959), 360 U. S. 252.

Moreover, counsel must be provided for an indigent convicted defendant for an appeal as of right. *Douglas* v. *California* (1963), 372 U. S. 353; *State* v. *Catlino* (1967), 10 Ohio St. 2d 183. This right has been given retroactive application. *Smith* v. *Crouse* (1964), 378 U. S. 584; *State* v. *Webb* (1967), 11 Ohio St. 2d 60.

This right exists even in the absence of a request. As articulated in *Swenson* v. *Bosler* (1967), 386 U. S. 258, at 260:

"Petitioner contends that, since the District Court did not hold a hearing to determine whether respondent actually requested the appointment of appellate counsel, the record as it presently exists does not support the Court of Appeals' express conclusion that respondent did make such a request. * * * But even if such a request had not been made, we do not think its absence would amount to a waiver of respondent's rights. It is now settled 'that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request.' *Carnley* v. *Cochran,* 369 U. S. 506, 513. When a defendant whose indigency and desire to appeal are manifest does not have the services of his trial counsel on appeal, it simply cannot be inferred from defendant's failure specifically to request appointment of appellate counsel that he has knowingly and intelligently waived his right to the appointment of appellate counsel."

The reasons for granting such a right to counsel on direct appeal have been variously stated:

"* * * In California, however, once the court has 'gone through' the record and denied counsel, the indigent has no recourse but to prosecute his appeal on his own, as best he can, no matter how meritorious his case may turn out to be. The present case, where counsel was denied petitioners on appeal, shows that the discrimination is not between 'possibly good and obviously bad cases,' but between cases where the rich man can require the court to listen to argument of counsel before deciding on the mer-

its, but a poor man cannot. There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself. The indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal." *Douglas* v. *California, supra* (372 U. S. 353), at 357.

"We agree with the Court of Appeals that this procedure violated respondent's Fourteenth Amendment rights, as defined in *Douglas,* even though respondent's trial counsel filed the notice of appeal and a motion for a new trial which specifically designated the issues which could be considered on direct appeal. The assistance of appellate counsel in preparing and submitting a brief to the appellate court which defines the legal principles upon which the claims of error are based and which designates and interprets the relevant portions of the trial transcript may well be of substantial benefit to the defendant. This advantage may not be denied to a criminal defendant, solely because of his indigency, on the only appeal which the State affords him as a matter of right." *Swenson* v. *Bosler, supra* (386 U. S. 258), at 259.

"The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution." *Johnson* v. *Zerbst* (1938), 304 U. S. 458, at 465.

"If the prisoner had not been denied this right to counsel, he would have had a reasonable opportunity to file his notice of appeal within the time limited by statute and to secure at state expense a transcript of the proceedings at his trial so that a bill of exceptions could have been

prepared and filed before due.'' *State* v. *Catlino, supra* (10 Ohio St. 2d 183), at 184.

The reasoning expressed in those statements is equally applicable and persuasive on the issue presented in this appeal. Regarding an indigent convicted defendant's right to notice of appeal and to notice of his right to court-appointed counsel for such an appeal, Senior Circuit Judge Medina stated, in *United States, ex rel. Smith,* v. *McMann* (1969), 417 F. 2d 648, 654 (certiorari denied, 397 U. S. 925):

''We think the only practical, logical and fair interpretation to be given to *Douglas* v. *California* is that it imposes upon the state a duty to warn every person convicted of crime of his right to appeal and his right to prosecute his appeal without expense to him by counsel appointed by the state, if he is indigent. The right to appeal at the expense of the state is mere illusion if the convicted indigent defendant does not know such a right exists. And the one way to make sure that he does know is to tell him so. Such a simple and comprehensive construction avoids the complication of a variety of miscellaneous fact patterns that have no relevance whatever to the underlying principle of *Douglas* v. *California,* but which may frustrate and render ineffective its beneficient purpose.

''Thus, for example, some courts, including our own, have, we think, been led astray by various forms of inquiry into the merit or lack of merit in the appeal, of which the state prisoner has been deprived in violation of his constitutional rights. A decision on the question of the merit or lack of merit in the appeal is not, we think, relevant to a decision in this type of case of the question of infringement *vel non* of the prisoner's constitutional right to equal protection of the laws.

''* * * But the prisoner's plight is the same, whether or not he indicates a desire to appeal, in the face of the established facts of his indigency and his lack of knowledge that he could appeal at the expense of the state. Nor can the prisoner's right to relief depend upon knowledge of his indigence by the trial judge.

``* * *

"Thus, the critical findings in this case must be: Was Joel Smith indigent at the time he was sentenced by the New York state court? And, was Smith informed or did he know prior to the expiration of his time to appeal that he could appeal without cost to himself and with counsel appointed by the state?"

See, also, *United States, ex rel. Witt*, v. *LaVallee* (1970), 424 F. 2d 421; *Goodwin* v. *Cardwell* (1970), 432 F. 2d 521; *People* v. *Montgomery* (1969), 24 N. Y. 2d 130, 247 N. E. 2d 130; and *Commonwealth* v. *Freeman* (1970), 438 Pa. 1, 263 A. 2d 403. Compare *United States, ex rel. O'-Brien*, v. *Maroney* (1970), 423 F. 2d 865.

Essentially, the opinions in those cases recognize that no conceivable benefit can be derived from rights of which one is unaware. If one's right to direct appeal and his right to court-appointed counsel for such an appeal are to be viable, it is imperative that there be such a determination of such rights by the appellate court.

We hold that, in this case, in the absence of evidence in the record upon which it could be determined that an indigent convicted defendant knowingly and intelligently waived his right of direct appeal and his right to court-appointed counsel for direct appeal prior to the expiration of the time in which such an appeal could be taken, it was error for the Court of Appeals to dismiss the motion for leave to appeal without making such a factual determination. To rule otherwise, would be to make the appellant's right of direct appeal and his right to counsel for such a direct appeal merely "sound and fury signifying nothing."

We need not decide now the extent to which these rights should be given retroactive application, in accordance with the guidelines established in a series of cases by the United States Supreme Court. *Linkletter* v. *Walker* (1965), 381 U. S. 618; *Tehan* v. *United States, ex rel. Shott* (1966), 382 U. S. 406; *Johnson* v. *New Jersey* (1966), 384 U. S. 719; and *Stovall* v. *Denno* (1967), 388 U. S. 293.

Although it is not necessary for an indigent convicted defendant to demonstrate "probable error to overcome

the presumption of regularity of the proceedings under which he was sentenced," *State* v. *Webb, supra* (11 Ohio St. 2d 60), at 62, it is essential for the purpose of a delayed appeal to the Court of Appeals in this state that *some* error be shown.

The judgment is reversed and the cause is remanded to the Court of Appeals for a factual determination regarding the appellant's motion for leave to file a delayed appeal based upon the appellant's indigency; and, if found to be indigent, for a determination whether he knowingly and intelligently waived his right to a direct appeal and his right to court-appointed counsel for such an appeal. Counsel for appellant should contact appellant's trial counsel and endeavor to obtain from him the latter's file and trial notes, as well as any suggestions trial counsel may have, the grounds which he would have asserted on direct appeal, for the purpose of determining whether the appellant has *some* grounds upon which to seek a review of his conviction. See *Anders* v. *California* (1967), 386 U. S. 738, and *United States, ex rel. Witt,* v. *LaVallee, supra* (424 F. 2d 421). If the Court of Appeals finds that appellant's counsel has diligently endeavored to obtain information upon which to base the appellant's application for a delayed appeal and that it is necessary in the interest of justice that a transcript be furnished to the appellant at state expense, it should be so provided; otherwise, a transcript is not required to be furnished unless the Court of Appeals allows the motion for a delayed appeal. *State, ex rel. Catlino,* v. *Clerk of Common Pleas Court* (1967), 9 Ohio St. 2d 101.

*Judgment accordingly.*

O'NEILL, C. J., SCHNEIDER, HERBERT, DUNCAN, CORRIGAN and LEACH, JJ., concur.