**UNITED STATES of America, Plaintiff,**

**v.**

**Richard Anthony ALOI, Defendant.**

**No. 5:90CR0311.**

United States District Court,
N.D. Ohio, E.D.

Aug. 23, 1991.

Joe Schmitz, Cleveland, Ohio, for plaintiff.

Matthew Fortado, Akron, Ohio, for defendant.

SENTENCING MEMORANDUM

ANN ALDRICH, District Judge.

Richard Anthony Aloi was convicted, by a jury, of two counts of being a felon in possession of a firearm or ammunition. 18 U.S.C. § 922(g)(1). Aloi is now before this Court for sentencing. The probation department recommends that this Court impose a sentence of 188 months of imprisonment. This recommendation is based on the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), which mandates a 15–year minimum sentence for a defendant who violates 18 U.S.C. § 922(g) and has three prior convictions for either violent felonies or serious drug offenses. *See also* United States Sentencing Guideline (U.S.S.G.) § 4B1.4.

Aloi raises several objections to his presentence report (PSR), the foremost of which is that the mandatory minimum should not apply in this case. Specifically, Aloi contends that the government has failed to meet its burden of showing three prior convictions for either violent felonies or serious drug offenses. As will be illustrated by the following discussion, this case is an example of the practical difficulties encountered in imposing sentence under the ACCA, since the Court is required to unearth the facts surrounding convictions which were entered against Aloi twelve, and twenty-four years ago, respectively. The arbitrary nature of the ACCA is also demonstrated by the fact that technical, legal distinctions regarding these ancient convictions mark the difference between a sentence of 21 to 27 months (roughly 2–3 years) or a mandatory minimum term of 180 months (15 years).

For the following reasons, the Court concludes that the mandatory minimum sentence required by the ACCA does not apply to Aloi's case. Accordingly, the Court will impose a sentence of 27 months, to be followed by four years of supervised release.

I.

The ACCA provides, in pertinent part:

In the case of a person who violated section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not less than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

18 U.S.C. § 924(e)(1).

Aloi's PSR initially computed his base offense level for a violation of 18 U.S.C. § 922(g)(1) at 12 points. *See* U.S.S.G. § 2K2.1(a)(2). Then, the PSR concluded that Aloi had at least three previous convictions for violent felonies. Applying U.S.S.G. § 4B1.4, which implemented the ACCA, the PSR recommended an increased base offense level of 33 points.[1] The PSR also concluded that Aloi would be unable to pay any fine mandated by the ACCA. Based on the recommended criminal history category of IV, the recommended guidelines ranges would be either 21–27 months, under the PSR's initial computation, or 188–235 months under the ACCA.

A.

To determine if it is appropriate to sentence Aloi under the ACCA, the Court must consider whether there are three prior convictions, of the type enumerated in 18 U.S.C. § 924(e), which support enhancement of Aloi's sentence. The Court will first briefly review Aloi's prior convictions, as reported by the probation department. All of these convictions were entered by

---

1. Aloi points out that U.S.S.G. § 4B1.4 was not effective until November 1, 1990—more than three weeks after he committed the offense in this case. However, § 4B1.4 merely implement-ed the mandatory minimum required by 18 U.S.C. § 924(e), which was in effect at the time of Aloi's offense.

either the Summit County or Lorain County Court of Common Pleas.

(1) In 1964, Aloi entered a plea of guilty to grand larceny and received a suspended sentence. The state court records do not show that Aloi was represented by counsel at either the plea or sentencing proceedings. The PSR recommends a guidelines score of zero (0) for this offense, pursuant to U.S.S.G. § 4A1.2(e)(3).

(2) In 1967, Aloi was convicted by a jury of armed robbery. According to the indictment in that case, Aloi robbed Susannah M. Cobb of $45 at gunpoint. Aloi was sentenced to 10–15 years in the Ohio State Reformatory; he was released from prison in 1971, and released from parole in 1972. The PSR recommends a guidelines score of zero (0) for this offense, pursuant to U.S.S.G. § 4A1.2(e)(3).

(3) In 1974, Aloi pleaded guilty to the illegal possession of hallucinogen for sale and to two counts of carrying a concealed weapon. The state dismissed other charges for illegal possession of narcotics for sale, felonious assault, possession of criminal tools, and possession of a weapon under a disability. According to the PSR:

> [T]he actual details of the situation remain unknown. In what would have appeared to be a fairly simple arrest for Illegal Sale of Narcotics, Mr. Aloi was armed and had to be stopped in the arrest process by gunfire. He was wounded in the process.

Aloi served approximately four years in the Ohio State Penitentiary for these offenses. (Aloi received a six month sentence for the firearms offense, to be served concurrently with the longer sentence for the narcotics offense.) The PSR recommends a guidelines score of three (3) for the drug possession plea pursuant to U.S.S.G. § 4A1.1(a), and a guidelines score of zero (0) for carrying the concealed weapon pursuant to U.S.S.G. § 4A1.2(e)(3).

(4) In 1979, Aloi pleaded guilty to two counts of aggravated burglary, one count of felonious assault, and one count of carrying a concealed weapon. In return for the plea, the state dropped several other charges. According to the PSR and the indictment for that offense, Aloi was involved in an automobile accident on December 31, 1978.[2] Aloi left the automobile, and, with at least two weapons in his possession, broke into two homes looking for a car to steal. As Aloi was arrested on January 3, 1979, he assaulted a police officer with a .38 caliber revolver. Aloi served more than 10 years in the Ohio State Penitentiary for this offense, and was paroled on August 15, 1989. The PSR recommends a guidelines score of three (3) for these offenses, pursuant to U.S.S.G. § 4A1.1(a). The PSR also recommends adding two (2) additional points under U.S.S.G. § 4A1.1(d) since Aloi committed the present offense while on parole, and one (1) additional point under U.S.S.G. § 4A1.1(e) since the present offense was committed less than two years from Aloi's release on a prior conviction.

Based on the PSR's recommendations, therefore, Aloi would receive a total of nine (9) criminal history points, placing him in a criminal history category of IV. The Court notes that Aloi's criminal history category will not be affected by this Court's rulings concerning the utility of Aloi's prior convictions for sentence enhancement purposes. Aloi challenges the validity of his 1967 conviction, but the probation department has assigned no points to that conviction for computing Aloi's criminal history category because Aloi completed his sentence for that offense more than fifteen years ago. *See* U.S.S.G. § 4A1.2(e)(3). Aloi also contends that his 1979 convictions should be considered a single "criminal episode"; however, since Aloi received a single sentence for all of those convictions, which were "related", Aloi received only a single criminal history score for those offenses pursuant to U.S.S.G. § 4A1.2(e)(2). *See* U.S.S.G. § 4A1.2, comment. (n. 3); *U.S. v. Chartier*, 933 F.2d 111, 115 (2d Cir.1991).

B.

▮ Aloi objects to two aspects of his criminal history score, but the Court finds

---

2. The PSR erroneously states that these events occurred on January 1, 1979. In fact, according to police reports, they ensued shortly after 11:00 p.m. on December 31, 1978.

these objections to be without merit. First, he argues that his 1974 conviction for drug possession should not be counted because his sentence for that offense was originally in error. But for that error, according to Aloi, he would have been released from the state penitentiary more than 15 years ago—therefore mandating a guidelines score of zero (0). *See* U.S.S.G. § 4A1.2(e). In 1974, Aloi was sentenced to a term of 10–20 years. In 1976, the sentence was modified to 1–10 years, and, in 1977, the sentence was modified to 1–5 years. However, the fact remains that Aloi was still not released on parole until 1978—even under the corrected sentence—which was less than 15 years before he committed the offense in this case. Therefore, it is proper to include three points in Aloi's criminal history score for the 1974 drug conviction. *See* U.S.S.G. § 4A1.1(a).

■ Second, Aloi objects to the addition of two points to his criminal history category, under U.S.S.G. § 4A1.1(d). His counsel stated that "Mr. Aloi was on parole only due to his failure to complete repayment of a debt for postage during his prior incarceration." Aloi also contends that application of U.S.S.G. § 4A1.1(d) places him in multiple jeopardy for the same offense. Under the sentencing guidelines, this Court may not second-guess the State of Ohio's decision to keep Aloi on parole. Section 4A1.1(d), and the commentary thereto, makes no reference to why a jurisdiction might choose to maintain an offender's parole status. *Cf. U.S. v. Dyke*, 901 F.2d 285, 287 (2d Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990) (district court properly added two points to criminal history score because of defendant's failure to pay court costs in connection with prior state court conviction). The Court also notes that Aloi has presented absolutely no evidence, absent counsel's representation, to support his allegation that the *only* reason he was on parole was his failure to pay postage.

■ In addition, it is well-settled that a criminal history score based on a defendant's parole status does not violate the double jeopardy clause, even though the

defendant may face additional penalties for his probation violation. *See U.S. v. Lewis*, 900 F.2d 877 (6th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 117, 112 L.Ed.2d 86 (1990) (two points added to criminal history score for failure to report to prison, even though crime, by definition, could only be committed while under a criminal justice sentence).

The double jeopardy clause protects defendants against "a second prosecution for the same offense ... [and] against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 [89 S.Ct. 2072, 2076, 23 L.Ed.2d 656] (1968). Calculation under the Federal Sentencing Guidelines of the proper sentence within the statutory range established by Congress, however, does not constitute multiple punishment.... [A]lthough the Guidelines seek to achieve a greater uniformity in sentencing for federal crimes, they do not alter the statutory ranges set by Congress.

*U.S. v. Alvarez*, 914 F.2d 915, 920 (7th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991) (citations omitted); *see also U.S. v. Mack*, 938 F.2d 678, 679 (6th Cir.1991) (enhanced sentence, based on prior conviction, does not violate double jeopardy). In this case, Congress established a statutory range of no more than 10 years, 18 U.S.C. § 924(a)(2), or at least 15 years under the ACCA. This Court, under U.S.S.G. § 4A1.1(d), will not violate the double jeopardy clause by considering Aloi's parole status to determine the appropriate sentence within the range mandated by Congress.

## II.

In its Notice of Intent to Seek Enhanced Sentence Under 18 U.S.C. § 924(e), the government identified four prior convictions which would subject Aloi to the ACCA. First, the government identified the 1967 armed robbery, which was a violation of former O.R.C. § 2901.13. The other three convictions all arose from Aloi's 1979 conviction: two convictions for aggravated burglary, under O.R.C. § 2911.12; and one conviction for felonious assault under

O.R.C. § 2903.11. Aloi challenges the enhancement, contending that his 1967 conviction was constitutionally invalid, and that his 1979 convictions should count as only one (or, at most, two) criminal episodes for sentence enhancement purposes.

## A.

Aloi alleges that his 1967 conviction for armed robbery is constitutionally infirm and, accordingly, may not be used as a basis for enhancing his sentence under the ACCA. Aloi contends that the jury was deadlocked in that case, and that the trial judge improperly directed the jury to return a verdict. Second, Aloi alleges that the trial judge never informed him of his right to appeal the conviction, or of his right to counsel to assist in the preparation of such an appeal.

■ There is little question that a constitutionally invalid conviction may not be used to enhance a sentence under the ACCA, even if the defendant failed to exhaust his remedies to challenge the prior conviction. *U.S. v. Wilkinson*, 926 F.2d 22, 27–28 (1st Cir.1991), *cert. denied,* — U.S. ——, 111 S.Ct. 2813, 115 L.Ed.2d 985 (1991); *U.S. v. Gallman*, 907 F.2d 639, 642–44 (7th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1110, 113 L.Ed.2d 219 (1991); *U.S. v. White*, 890 F.2d 1033, 1035 (8th Cir.1989); *U.S. v. William Taylor*, 882 F.2d 1018, 1029–30 (6th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 2592, 110 L.Ed.2d 273 (1990) and *abrogated on other grounds, Taylor v. U.S.*, 495 U.S. 575, 110 S.Ct. 2143, 2148 n. 2, 109 L.Ed.2d 607 (1990); *Greene v. U.S.*, 880 F.2d 1299, 1301–02 (11th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1322, 108 L.Ed.2d 498 (1990); *U.S. v. Clawson*, 831 F.2d 909, 914 (9th Cir.1987), *cert. denied,* 488 U.S. 923, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988); *U.S.*

*v. Clark*, 735 F.Supp. 861 (N.D.Ill.1990); *U.S. v. Gantt*, 659 F.Supp. 73, 76–79 (W.D.Pa.1987). The origins of this principle may be traced to *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), and *U.S. v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). In *Burgett*, the Supreme Court reversed a conviction under the Texas recidivist statute where the certified copy of one of Burgett's prior convictions showed that he was not represented by counsel, in violation of the sixth amendment. Similarly, in *Tucker*, the Supreme Court held that Tucker was entitled to relief under 28 U.S.C. § 2255 when, after the district court based Tucker's 25–year sentence for bank robbery on three prior state court convictions, the state court found two of those convictions to be invalid because Tucker had not been represented by counsel.

■ Generally, the government has the burden of establishing a defendant's prior convictions, for sentence enhancement purposes, by a preponderance of the evidence. *Wilkinson*, 926 F.2d at 28. This burden will be satisfied if the government offers certified records which, on their face, demonstrate that the prior convictions were valid. *Taylor*, 882 F.2d at 1031; *see also White*, 890 F.2d at 1035–36. A certified record would fail to meet this burden if, for example, the record indicated that the defendant had not been represented by counsel. *Gantt*, 659 F.Supp. at 79; *see also Burgett*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319.[3] Once the government introduces sufficient documentary evidence to create a presumption that the prior conviction was valid, the burden shifts to the defendant to prove "that his convictions were in fact not constitutionally sound." *Taylor*, 882 F.2d at 1031; *accord Gallman*, 907 F.2d at 642–44.[4]

---

3. Of course, the government can still meet its burden if it can prove that the defendant validly waived his right to counsel. *Gantt*, 659 F.Supp. at 79; *but see Wilkinson*, 926 F.2d at 28 (if court records are silent, defendant must at least affirmatively represent that he was not represented by counsel).

4. Some courts outside the Sixth Circuit require the defendant only to establish a *prima facie* case that the prior conviction was unconstitutional, after which the burden shifts back to the government. *Clark*, 735 F.Supp. at 866; *U.S. v. Henry*, 713 F.Supp. 1182, 1184 n. 4 (N.D.Ill. 1989), *aff'd*, 933 F.2d 553 (7th Cir.1991). However, the Sixth Circuit's opinion in *Taylor* does not indicate that the burden would ever revert

In this case, the government has met its initial burden of verifying Aloi's 1967 conviction. The government has introduced certified records from the Summit County Court of Common Pleas which indicate that a jury convicted Aloi of armed robbery, in violation of former O.R.C. § 2901.13, on December 6, 1967, at 3:00 p.m. According to the records, the case was submitted to the jury on December 5, 1967, at 2:00 p.m. On December 12, 1967, the trial court denied Aloi's motion for a new trial and imposed sentence. The records further indicate that Aloi was represented by counsel throughout these proceedings. Accordingly, the Court must consider whether Aloi has proved, by a preponderance of the evidence, that this conviction was unconstitutionally obtained.

### 1.

Aloi contends that, after the jury reported a deadlock, the trial judge improperly directed the jurors to return a verdict. Since no appeal was filed, this contention cannot be verified by reference to the trial transcript. In addition, Aloi's counsel has been unable to locate the court reporter's notes from the Summit County Court of Common Pleas. The trial judge is deceased. The prosecutor and defense attorney from that trial are still living, but neither of them can recall the details of Aloi's trial.

One piece of significant evidence that survives is Aloi's 1967 motion for a new trial. In that motion, Aloi's attorney, Bernard I. Rosen, argued that the trial judge erred by allowing the jury to continue deliberations after it twice indicated that it was deadlocked. In addition, Rosen argued that it was error for the trial judge to "admonish[ ] the jury upon sending them

back for their final deliberation that the State of Ohio was being put to great expenses in continuing this trial and they should reach a verdict." [5] The Court finds this representation worthy of belief, since it is unlikely that an attorney would jeopardize his standing as a member of the bar by misstating facts to the very judge who had presided at trial only a few days before, the late Honorable Claude V.C. Emmons. It would appear that Judge Emmons simply found the legal basis of these arguments to be without merit when he denied Aloi's motion for a new trial.

Aloi also testified regarding the trial judge's charge to the jury. In addition to restating the representations made by attorney Rosen in the 1967 motion, Aloi testified that the trial judge told the jurors that, since it was the Christmas season, they should be home with their families. However, Aloi recalled the jury as having been out for as many as five days, rather than the 25 hours reflected by the Summit County court records.

It is well-established that a trial court may properly encourage a deadlocked jury to continue its deliberations and attempt to reach a verdict. *Allen v. U.S.*, 164 U.S. 492, 501–02, 17 S.Ct. 154, 157–58, 41 L.Ed. 528 (1896). In *Allen*, the Supreme Court upheld the trial court's instruction that deadlocked jurors, and especially those in the minority, should reexamine their tentative conclusions in light of the reasoning of their fellows. *Id.* The Supreme Court stated that "[w]hile, undoubtedly, the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury room." *Id.* at 501, 17 S.Ct. at 157. An *Allen* charge will

to the government once it has presented sufficient documentary evidence to validate the prior conviction.

**5.** The motion for a new trial also identified "irregularities" concerning (1) Aloi's identification at a police line-up without the presence of counsel, (2) testimony that police officers were looking for Aloi for a narcotics offense when he was arrested, and (3) testimony on rebuttal beyond the scope of the evidence presented by Aloi. The motion also alleged that the verdict

was not supported by sufficient evidence. However, this Court has not seen sufficient, credible evidence which would illuminate the details of these objections. Moreover, to the extent that any of these "irregularities" rose to the level of constitutional violations, this Court cannot determine whether such errors might have been harmless in light of the entire trial record. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

be held improper, and rise to the level of a constitutional violation, only if "in its context and under all the circumstances [the charge] ... was coercive." *Williams v. Parke*, 741 F.2d 847, 850 (6th Cir.1984), *cert. denied*, 470 U.S. 1029, 105 S.Ct. 1399, 84 L.Ed.2d 787 (1985) (quoting *Jenkins v. U.S.*, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965)).

If the *Allen* charge is determined to have been "coercive," the Court must then consider other factors to determine whether the defendant was prejudiced by the charge. For example, " [t]he speed with which a jury may reach a verdict following the giving of the charge cannot be considered' in determining whether the charge was coercive." *Williams*, 741 F.2d at 850 (quoting *U.S. v. Giacalone*, 588 F.2d 1158, 1168 (6th Cir.1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979)). However,

> [o]nce an *Allen* charge is found coercive, the length of time between the giving of the charge and the rendering of the verdict becomes relevant to determine whether the defendant has been prejudiced by the giving of the coercive charge.

*Id.* n. 2 (citations omitted).

The evidence which Aloi presented supports the inference that the *Allen* charge given by Judge Emmons was, under the circumstances of the case, coercive. This Court recognizes that, on at least one occasion, the Sixth Circuit upheld an *Allen* charge which mentioned the cost of the trial, but the Circuit did so without commenting on that aspect of the charge. *Williams*, 741 F.2d at 849. Other courts, which have directly confronted the issue, have concluded that reference to fiscal concerns is improper in an *Allen* charge. *U.S. v. Mason*, 658 F.2d 1263, 1266–67 (9th Cir. 1981); *see also U.S. v. West*, 877 F.2d 281, 291 (4th Cir.1989), *cert. denied*, 493 U.S. 869, 110 S.Ct. 195, 377, 1113, 107 L.Ed.2d

149 (1990) (disapproving reference, but finding that instruction in question "did not place undue emphasis on this factor" and therefore was not coercive); *but cf. U.S. v. Rey*, 811 F.2d 1453, 1459 (11th Cir.1987), *cert. denied*, 484 U.S. 830, 108 S.Ct. 103, 98 L.Ed.2d 63 (1987) (reluctantly upholding *Allen* charge which made reference to costs of trial in light of controlling precedent).

In Aloi's case, Judge Emmons' *Allen* charge appears to have been coercive. The judge seems to have unduly emphasized the cost to the prosecuting authority, as opposed to the cost to both sides. The charge was also given after the jury had already twice reported a deadlock—after which, presumably, Judge Emmons also gave some type of *Allen* charge.[6] Finally, the Court finds that it may properly infer that this coercive charge was prejudicial. From the evidence presented, it appears that the jury returned its guilty verdict shortly after Judge Emmons' third admonition. This inference is also supported by the fact that the jury had twice previously reported itself deadlocked. *See Epperson v. U.S.*, 471 A.2d 1016 (D.C.App.1984) and, *on reh.*, 495 A.2d 1170 (D.C.App.1985) (giving of second *Allen* charge was coercive).

2.

Second, Aloi contends that he was not advised of his right to pursue an appeal of his conviction, or of his right to counsel (if he could not afford his own lawyer) on that appeal. In support of this position, Aloi offers sworn affidavits from defense attorney Rosen and the prosecuting attorney, Edwin C. Pierce. Neither Rosen nor Pierce have any independent recollection that Aloi was advised of his appellate rights. In addition, Rosen attests that, in 1967, it was the common practice in Summit County for judges not to advise defendants concerning their appellate rights. This representation is supported by the fact that the Ohio Supreme Court failed to fully recognize a defendant's right to advice of his appellate rights until 1971. *See State v. Sims*, 27

---

**6.** Another important factor, evidence of which is unavailable, would be Judge Emmons' complete statement: did he, for example, "remind the jurors that no one should surrender an honest conviction about the case simply because the other jurors disagreed"? In *U.S. v. Scott*, 547 F.2d 334, 337 (6th Cir.1977), the court of appeals found this element to be "one of the most important parts of the *Allen* charge."

Ohio St.2d 79, 56 O.O.2d 45, 272 N.E.2d 87 (1971).[7] Ohio Rule of Criminal Procedure 32(A)(2), adopted in 1973, now expressly requires Ohio judges to advise criminal defendants of their right of appeal.

Aloi also testified that he was unaware of his appellate rights in 1967, and the Court finds this part of his testimony to be credible. Ohio courts later refused to grant Aloi leave to file a delayed appeal. This Court notes that the state court records indicate that Judge Emmons denied Aloi's motion for a new trial on December 12, 1967, and then immediately imposed sentence. The fact that an appeal was not pursued corroborates Aloi's position. In addition, while Aloi is now a veteran of the criminal justice system, his 1967 conviction was preceded only by a 1964, uncounseled plea of guilty for grand larceny, after which Aloi received a suspended sentence.

When a state provides the right to appeal a criminal conviction, all defendants, including those unable to afford a lawyer, must be provided with equal access to the appeals process. *Douglas v. California*, 372 U.S. 353, 355–56, 83 S.Ct. 814, 815–16, 9 L.Ed.2d 811 (1963); *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).[8] A defendant's right to an appeal, and right to appellate counsel, only can be waived knowingly and intelligently. *Swenson v.*

*Bosler*, 386 U.S. 258, 260, 87 S.Ct. 996, 997, 18 L.Ed.2d 33 (1967); *U.S. ex rel. Smith v. McMann*, 417 F.2d 648, 654–55 (2d Cir. 1969) (en banc), *cert. denied*, 397 U.S. 925, 90 S.Ct. 929, 25 L.Ed.2d 105 (1970); *see also Sims*, 27 Ohio St.2d 79, 56 O.O.2d 45, 272 N.E.2d 87. For such a waiver to be effective, the trial court normally must advise the defendant of his right to an appeal at the time of sentencing. *See McMann*, 417 F.2d at 654 & n. 7.

In 1967, Ohio law provided for an appeal, as a matter of right, for criminal convictions. Former O.R.C. § 2953.05. Based on the evidence presented, the Court concludes that Aloi has proved, by a preponderance of the evidence, that he was unaware of his right to appeal his 1967. This Court is not persuaded that Aloi's appellate rights were diminished because his trial counsel had been retained by his parents, rather than appointed by the court after a finding of indigency. Aloi did not waive his right to appeal, or his right to counsel on appeal, knowingly and intelligently. Therefore, the 1967 conviction is constitutionally infirm and cannot be used to enhance his sentence under the ACCA.

### B.

Aloi next argues that his 1979 convictions for aggravated burglary and feloni-

**7.** A divided Ohio Supreme Court later declined to give *Sims* retroactive effect. *State v. Leroy*, 30 Ohio St.2d 138, 59 O.O.2d 153, 283 N.E.2d 136 (1972). However, as the case law cited in section II.A. of this sentencing memorandum indicates, this state law procedural bar does not prevent Aloi from collaterally attacking the conviction for sentencing purposes. In addition, the Court notes that the right to an appeal, and to counsel on appeal, had already been recognized as a matter of federal constitutional law by 1967. *Swenson v. Bosler*, 386 U.S. 258, 260, 87 S.Ct. 996, 997, 18 L.Ed.2d 33 (1967); *Douglas v. California*, 372 U.S. 353, 355–56, 83 S.Ct. 814, 815–16, 9 L.Ed.2d 811 (1963).

**8.** The government contends that there is no constitutional right to an appeal, with reference to an Eighth Circuit opinion, *U.S. v. Drummond*, 903 F.2d 1171, 1174 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 759, 112 L.Ed.2d 779 (1991). While this is true, once the state provides for an appeal, *Douglas* teaches that all defendants must be granted equal access to the appeals process. The Court also notes that

Drummond claimed that the district court failed to advise him of his appellate rights as required by Federal Rule of Criminal Procedure 32(a)(2), and sought relief under 28 U.S.C. § 2255. The district court found, as a factual matter, that Drummond knew of his appellate rights, notwithstanding its failure to comply with Rule 32(a)(2), and the court of appeals applied a harmless error analysis. *Id.* at 1174–75. This Court also notes that *Drummond* represents a minority view that a failure to comply with Rule 32(a)(2) does not, automatically, reinstate a defendant's right to appeal. *Id.* at 1175–76 (Heany, J., dissenting); *see also U.S. v. Butler*, 938 F.2d 702 (6th Cir.1991).

The other authority relied upon by the government, *Davis v. Estelle*, 502 F.2d 523, 524 (5th Cir.1974), declined, on the unique circumstances presented, to allow the petitioner on *habeas corpus* to collaterally challenge a conviction where he claimed to have not been advised of his appellate rights. Notably, the court of appeals previously had rejected precisely the same argument in another appeal brought by the same petitioner.

ous assault, which resulted from a single guilty plea, should count as only one conviction—or at most, two convictions—for sentence enhancement purposes under the ACCA.

According to certified state court records, which have been submitted to the Court by the government, Aloi pleaded guilty to three counts of an eleven count indictment on February 23, 1979. Those counts were as follows:

COUNT ONE: aggravated burglary, in violation of O.R.C. § 2911.11. Aloi illegally entered the residence of J.W. Hebebrand at 708 Memorial Parkway in Akron, Ohio, on or about December 31, 1978.

COUNT TWO: aggravated burglary, in violation of O.R.C. § 2911.11. Aloi illegally entered the residence of Robert E. Patterson at 615 Doris Avenue in Akron, Ohio, on or about December 31, 1978.

COUNT SIX: felonious assault, in violation of O.R.C. § 2903.11. Aloi assaulted Patrolman Michael Gay of the Norton Police Department with a loaded firearm on January 3, 1979.

In return, the state dropped the remaining eight counts of the indictment, which included other charges of aggravated burglary and felonious assault, as well as charges of kidnapping, grand theft, carrying concealed weapons, possessing weapons while under a disability, and possessing criminal tools.

### 1.

■ In order to better understand the facts surrounding Aloi's 1979 conviction, the Court has reviewed police reports of the incident, which have been submitted by the government. These police reports were apparently used to prepare Aloi's PSR. The Court recognizes Aloi's concern that the police reports contain statements which cannot now be subject to cross-examination. However, for sentencing purposes,

the Court is permitted to consider extrinsic evidence, beyond the indictment, to determine the nature of Aloi's prior offenses.

In *U.S. v. Maddalena*, 893 F.2d 815, 819–20 (6th Cir.1989), the district court considered a 1975 prosecutor's information to determine whether Maddalena's plea of guilty for unarmed bank robbery, 18 U.S.C. § 2113(a), was a "crime of violence" in order to determine whether Maddalena was a "career offender." *See* U.S.S.G. § 4B1.1; 18 U.S.C. § 16. Maddalena argued that the district court could only consider the language in the statute, and he pointed out that one may violate 18 U.S.C. § 2113(a) by robbing a bank by *either* "force or violence" *or* "intimidation." [9] The prosecutor's information indicated that Maddalena wore a ski mask and told a teller, "Hurry up now, I don't want anyone to get hurt;" the court of appeals found these facts sufficient to establish that the 1975 bank robbery had been a "crime of violence." Referring to a Fifth Circuit case, *U.S. v. Flores*, 875 F.2d 1110, 1112 (5th Cir.1989), *Maddalena* concluded that district court judges have discretion to consider evidence beyond the statute—such as the underlying indictment—to determine the nature of a prior offense. In *Flores*, also decided under the "career offender" guideline, the Fifth Circuit permitted a district court to consider the defendant's state court presentence reports to determine whether his burglary convictions had been violent transgressions of the relevant Texas statute.

Taken together, *Maddalena* and *Flores* indicate that this Court may consider extrinsic evidence about the nature of Aloi's prior convictions. The Court notes that *Maddalena* and *Flores* represent a continuing split among the circuits. *See U.S. v. Hernandez*, 753 F.Supp. 1191, 1196 (S.D.N.Y.1990) (collecting authority). *Hernandez* pointed to language in *Taylor v. U.S.*, 495 U.S. 575, 110 S.Ct. 2143, 2159–60, 109 L.Ed.2d 607 (1990), where a unanimous Supreme Court concluded that the sentencing court may look only to the "generic"

---

**9.** Notably, the Ninth Circuit resolved the same issue by concluding that a robbery by "intimidation" was also, by definition, a "crime of violence," thereby avoiding a factual inquiry

into the defendant's previous conviction. *U.S. v. Selfa*, 918 F.2d 749, 751 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 521, 112 L.Ed.2d 532 (1990).

statutory definition of a prior burglary conviction, and not to the underlying facts, to determine whether a burglary conviction was a "violent felony" within the meaning of the ACCA:

> [T]he practical difficulties and potential unfairness of a factual approach are daunting. In all cases where the government alleges that the defendant's actual conduct would fit the generic definition of burglary, the trial court would have to determine what that conduct was. In some cases, the indictment or other charging instrument might reveal the theory or theories of the case presented to the jury. In other cases, however, only the Government's actual proof at trial would indicate whether the defendant's conduct constituted generic burglary. Would the Government be permitted to introduce the trial transcript before the sentencing court, or if no transcript is available, present the testimony of witnesses? Could the defense present witnesses of its own, and argue that the jury might have returned a guilty verdict on some theory that did not require a finding that the defendant committed generic burglary? If the sentencing court were to conclude, based on its own review of the record, that the defendant actually committed a generic burglary, could the defendant challenge that conviction as abridging his right to a jury trial? Also, in cases where the defendant pleaded guilty, there is often no record of the underlying facts. Even if the Government were able to prove these facts, if a guilty plea to a lesser, nonburglary offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to burglary.

Other courts have pointed out that, given the practical problems, "it is unlikely that Congress would implicitly authorize ... ad hoc mini-trials regarding an individual's prior criminal conduct." *U.S. v. Sherbondy*, 865 F.2d 996, 1008 (9th Cir.1988); *accord U.S. v. Gonzalez–Lopez*, 911 F.2d 542, 548 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991); *U.S. v. Leonard*, 868 F.2d 1393, 1397 (5th Cir.1989), *abrogated on other grounds*, *Taylor v. U.S.*, 495 U.S. 575, 110 S.Ct. 2143, 2148 n. 2, 109 L.Ed.2d 607 (1990). Such proceedings would require testimony from witnesses concerning long-ago conduct, and "[s]uch testimony is highly unreliable." *Sherbondy*, 865 F.2d at 1008; *accord Gonzalez–Lopez*, 911 F.2d at 547–48; *Leonard*, 868 F.2d at 1397. In addition, "documentary evidence would provide little insight into the actual events giving rise to the conviction because rap sheets usually include nothing more than evidence of a conviction." *Gonzalez–Lopez*, 911 F.2d at 548. "Even if the court were to limit its inquiry into court records, substantial problems would arise where ... prior convictions are based on guilty pleas and little or no record has been developed." *Leonard*, 868 F.2d at 1397.

Thus, while the controlling authority from the Sixth Circuit indicates that this Court may consider the extrinsic evidence presented by the government regarding Aloi's 1979 convictions, the Court will bear these practical concerns in mind in assigning appropriate weight to that evidence. The Court is aware that the 1979 convictions were based on Aloi's guilty plea, and, as such, no trial record—with the state's witnesses subject to cross-examination—exists concerning the precise facts underlying the guilty plea. Beyond the indictment, the government has only presented police reports which were prepared during the investigation of Aloi's offenses and are not part of the official state court records. The government has not sought to introduce transcripts of any proceedings against Aloi, such as the entry of his plea of guilty where he might have been called upon to describe the facts surrounding his offense.

### 2.

According to the police reports, Aloi and his brother were involved in an automobile accident on Memorial Parkway in Akron, Ohio, on December 31, 1978. Aloi retrieved his luggage from the trunk and abandoned the car. Aloi was also carrying an automatic rifle and a hand gun. He broke into the Hebebrand home at 708 Memorial Parkway, looking for the keys to a vehicle

which was parked in the driveway. Aloi did not find any keys, so he continued through the backyard until he reached the Patterson home at 615 Dorris Avenue.[10] Since no one was at home when Aloi broke into the Hebebrand residence, it is impossible to precisely gauge the amount of time which elapsed before Aloi approached the Patterson residence. Aloi gained entry through the rear entrance of the Patterson home and threatened Mr. Patterson with the handgun, demanding the Pattersons' car. Mr. Patterson provided Aloi with the keys. Aloi forced Mr. Patterson to accompany him to the car, and briefly attempted to compel Mr. Patterson to enter the car. Aloi then drove away. He was arrested on January 3, 1979. During the arrest, he assaulted Patrolman Michael Gay with a .38 caliber revolver.

At the sentencing hearing in this case, the government presented the testimony of Special Agent Larry R. Brock of the Bureau of Alcohol, Tobacco, and Firearms. On August 8, 1991, Brock visited the locations of Aloi's 1979 burglaries. He estimates that the two residences are approximately 150 yards apart. The residences are separated by an overgrown ravine, which is about 30 feet deep, and they were barely visible from one another. However, there are no other homes between the two residences. Brock readily conceded that he has no independent knowledge of the topography of the area in 1978. He testified that there were several old trees in the area of the ravine, that would have been there in 1978. The Court notes the obvious—the trees would have been smaller then. In addition, since Aloi committed the two burglaries during the winter, there would have been less foliage on the trees to obstruct the view between the two homes. In fact, the police reports indicate

that Mrs. Patterson saw emergency vehicles responding to the accident on Memorial Parkway from the back of her home at 608 Dorris Avenue.

Aloi also testified about his 1979 conviction. He testified that he was under the influence of drugs and/or alcohol at the time, so his memory is dim. Aloi remembers these events as a single "blur", and he recalls tumbling "head-over-heels" in the ravine as he went from the Hebebrand home to the Patterson home. He also testified that his intent was to get a car to get away. Aloi testified that he remained disoriented for several days, and that he committed the felonious assault by driving his car into the front of the Norton Police Station as a suicide attempt. Norton is about 15 miles away from the residences on Memorial Parkway and Dorris Avenue.

3.

■ While considerable case law has been devoted to determining whether multiple convictions count for a single or several predicate acts under the ACCA, it is useful to begin with the plain language of the statute. The Supreme Court has favored this approach in construing other aspects of statutes which impose mandatory minimum sentences. *Chapman v. U.S.,* —— U.S. ——, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991); *Taylor,* 110 S.Ct. 2143;[11] *cf. Lewis v. U.S.,* 445 U.S. 55, 60, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1980). The ACCA, which is quoted in full above, establishes the fifteen-year mandatory minimum sentence for a defendant who "has three previous convictions ... for a violent felony or a serious drug offense, or both, *committed on occasions different from one another....*" 18 U.S.C. § 924(e)(1) (emphasis added). Thus, this Court is called upon to engage in the

---

**10.** The government speculates that Aloi may have gone around the block, given the ravine behind 708 Memorial Parkway, and therefore taken more time in beginning a "second" criminal episode. However, this is in direct contradiction to the police reports submitted by the government.

**11.** *Taylor* held that a generic and uniform definition of burglary, rather than an individual state's conception of the term, must be used to

determine whether a prior burglary was a violent felony. The uniform definition encompasses any crime, of whatever name, that has "the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 2158; *see also U.S. v. Fish,* 928 F.2d 185 (6th Cir.1991). There is no question that O.R.C. § 2911.12, under which Aloi was convicted for aggravated burglary, falls within this definition.

deceptively complex task of determining whether the two aggravated burglaries, and the assault on Patrolman Gay, were committed on the same or different occasions. *See U.S. v. William Taylor,* 882 F.2d 1018, 1028–29 (6th Cir.1989), *cert. denied,* 110 S.Ct. 1322 (1990) and *abrogated on other grounds, Taylor v. U.S.,* 495 U.S. 575, 110 S.Ct. 2143, 2148 n. 2, 109 L.Ed.2d 607 (1990) (noting difficulty of "how to count multiple convictions arising from the same or closely related actual conduct ...., particularly when a defendant has been convicted in a single judicial proceeding of several felonies arising from conduct committed on the same night, in a prolonged attack on the same victim, or as a single 'crime spree' ").

> The Sixth Circuit has taken the view that multiple guilty verdicts which arise from the *same* criminal episode can constitute only one conviction for purposes of the Armed Career Criminal Act. Multiple guilty verdicts must originate from multiple episodes that are distinct in time in order to constitute multiple convictions.

*U.S. v. Pedigo,* 879 F.2d 1315, 1317 (6th Cir.1989) (emphasis original). There is no requirement that the prior convictions have been separately adjudicated; the prior convictions may have been simultaneously obtained, and the defendant may have received concurrent sentences for those convictions.[12] However, the burden of proof is upon the government to establish that the convictions were, in fact, separate criminal episodes. *Id.,* at 1318–19.[13] This Court believes, in accord with this standard, that

> the separate criminal episode requirement must be read rigorously and ... we must insist that the government prove convincingly that the crimes (and the episodes of which they were a part) were truly separate.

*U.S. v. Balascsak,* 873 F.2d 673, 684 (3d Cir.1989) (Becker, J., concurring); *see also U.S. v. Schieman,* 894 F.2d 909, 913–15 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 155, 112 L.Ed.2d 121 (1990) (Ripple, J., concurring in part and dissenting in part).

In the search of a definition for "criminal episode," the government has directed this Court's attention to the following language from *U.S. v. Hughes,* 924 F.2d 1354, 1361 (6th Cir.1991):

> An episode is an incident that is part of a series, but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration.

This definition is decidedly unhelpful, however, given the fact-specific nature of the necessary inquiry. Thus, following the Sixth Circuit's example in *Hughes,* this Court will consider the events of December 31, 1978, and January 3, 1979, in light of the facts of other cases under the ACCA.

*Hughes* itself was a drug case under the enhancement provisions of 21 U.S.C. § 841(b)(1)(A). These provisions were applicable because Hughes pled guilty to con-

---

**12.** In this regard, the Sixth Circuit is in accord with the majority of appellate courts. *See U.S. v. Schieman,* 894 F.2d 909, 911 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 155, 112 L.Ed.2d 121 (1990) (collecting authority; *contra U.S. v. Balascsak,* 873 F.2d 673, 683–84 (3d Cir.1989) (en banc) (two burglaries, which occurred on same night, counted as single predicate offense since convictions were adjudicated together). In *Balascsak,* six members of the Third Circuit took the minority view that defendant's prior criminal episodes must be separated by convictions, considering substantial legislative history to support the view that Congress intended the enhancement to apply only to "three-time losers." 873 F.2d at 674–84. A seventh judge disagreed with this analysis but, on the facts presented, concluded that the govern-

ment had not proved that the two burglaries were "separate criminal episodes." *Id.* at 684–85 (Becker, J., concurring). Five judges dissented from the judgment of the court of appeals. *Id.* at 685–88 (Greenberg, J., dissenting); *see also U.S. v. Schoolcraft,* 879 F.2d 64, 70–74 (3d Cir.1989), *cert. denied,* 493 U.S. 995, 110 S.Ct. 546, 107 L.Ed.2d 543 (1989) (discussing *Balascsak,* and holding that criminal offenses under ACCA need not be punctuated by adjudications of conviction).

**13.** In *Pedigo,* the prior convictions were presented as a jury question, and the court of appeals held that testimony from police officers that Pedigo had received three convictions arising from a "series" of burglaries was insufficient to establish three distinct criminal episodes.

spiracy to possess more than five kilograms of cocaine with the intent to distribute, 21 U.S.C. § 846. Section 841(b)(1)(A) provides for a mandatory 20–year term of imprisonment where the defendant has a prior, final conviction for a felony drug offense. Hughes previously pled guilty to possession of cocaine, a felony under Michigan Comp.Laws § 333.7403, after the state dropped a more serious charge of possession with the intent to distribute, Mich. Comp.Laws § 333.7401. On appeal, he argued that the sentence enhancement provision did not apply because his state law conviction was based on facts related to his federal conspiracy conviction, and, as such, did not constitute a separate and distinct criminal episode. Hughes emphasized that both offenses occurred at the same location, and that both involved possession and attempted distribution of cocaine. The court of appeals rejected Hughes' argument, pointing out that his state court conviction was based on a single police raid which occurred on March 4, 1988. The federal conspiracy conviction, however, was based on evidence obtained during another police raid nine months later. 924 F.2d at 1361–62.

The *Hughes* court based its analysis on the Fourth Circuit's opinion in *U.S. v. Blackwood*, 913 F.2d 139, 144–47 (4th Cir. 1990). In *Blackwood*, the government sought a mandatory life term under 21 U.S.C. § 841(b)(1)(A), based on Blackwood's two prior felony drug convictions. Seven years earlier, Blackwood was arrested for transporting marijuana in his pick-up truck. Two hours after Blackwood's arrest, police had seized more marijuana from Blackwood's motel room. A grand jury returned two separate indictments for these offenses, but Blackwood's case was consolidated for trial and sentencing. The Fourth Circuit concluded that the two convictions could only stand as a single predicate act for purposes of sentence enhancement.

The Sixth Circuit in *Hughes* also tracked the Fourth Circuit's analysis of cases involving enhancements under the ACCA. 924 F.2d at 1361; *see Blackwood*, 913 F.2d

at 146. These cases indicate that separate criminal episodes are generally characterized as being distinct in time, although the elapsed period is often relatively brief. In addition, the first episode has often been "successfully completed" before the second episode begins. *E.g., U.S. v. Tisdale*, 921 F.2d 1095, 1098–99 (10th Cir.1990) (defendant "successively" burglarized three separate businesses in shopping mall during the course of the same night); *U.S. v. McDile*, 914 F.2d 1059 (8th Cir.1990) (drug sales over several months made to two different individuals); *U.S. v. Washington*, 898 F.2d 439 (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 122, 112 L.Ed.2d 91 (1990) (defendant robbed convenience store at night, then returned and robbed same store the following morning); *U.S. v. Schieman*, 894 F.2d 909, 913 (7th Cir.1990) (three blocks away from burglary, and five minutes later, defendant assaulted police officer who approached to question defendant); *U.S. v. Herbert*, 860 F.2d 620 n. 1 (5th Cir.1988), *cert. denied*, 490 U.S. 1070, 109 S.Ct. 2074, 104 L.Ed.2d 639 (1989) (two burglaries committed three days apart at different locations); *U.S. v. Gillies*, 851 F.2d 492, 497 (1st Cir.1988), *cert. denied*, 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988) (two drug store robberies on consecutive days); *U.S. v. Wicks*, 833 F.2d 192 (9th Cir.1987), *cert. denied*, 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988) (two burglaries on same night at separate locations).

On the other hand, multiple convictions have been held to fall within "the orbit of continuous conduct" in two types of situations. The first situation involves a single crime victim, even when the criminal activity occurs over an extended period of time. *E.g., U.S. v. Towne*, 870 F.2d 880, 888–91 (2d Cir.1989), *cert. denied*, 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989) (extended attack, including both rape and kidnapping). The second prototypical fact pattern involves simultaneous, or nearly simultaneous actions, against several victims. *E.g., U.S. v. Petty*, 828 F.2d 2 (8th Cir.1987), *cert. denied*, 486 U.S. 1057, 108 S.Ct. 2827, 100 L.Ed.2d 928 (1988) (simultaneous robbery of six individuals); *U.S. v.*

*Montgomery,* 819 F.2d 847, 849–50 (8th Cir.1987) (simultaneous robbery of two individuals); *cf. U.S. v. Schoolcraft,* 879 F.2d 64, 74 (3d Cir.1989) (not deciding whether three armed robberies, committed within two hours, were a single offense since defendant had two other convictions which brought him within the enhancement provisions of the ACCA); *Balascsak,* 873 F.2d at 684–85 (Becker, J., concurring) (government did not meet burden of showing that two burglaries, which occurred during the same night, were separate criminal episodes).

4.

■ Based on its consideration of the evidence, and in light of these authorities, the Court finds that the government has not met its burden of establishing that Aloi's two convictions for aggravated burglary were separate "criminal episodes" which were "distinct in time." *Pedigo,* 879 F.2d at 1317. This Court cannot conclude that the two burglaries, which were committed in a short space of time and for the single purpose of stealing an automobile, were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Rather, the facts indicate that Aloi unsuccessfully burglarized the Hebebrand home, looking for an automobile, and then immediately continued his quest at the Patterson home. The government has not presented any evidence which would indicate that these events did not occur on the same occasion, or that they were separated by any appreciable interval of time.

■ The Court also concludes that the government has met its burden of showing that Aloi's assault against Patrolman Gay was a separate criminal episode from the two burglaries. The case law discussed above supports this conclusion, even though, in a broad sense, the assault was "related" to the two burglaries. As stated in the indictment to which Aloi pled, the assault on Patrolman Gay occurred four days after the burglaries, so it was clearly distinct in time, and the nature of the crime was far different from the burglaries committed by Aloi. *See U.S. v. Schieman,* 894 F.2d 909, 913 (7th Cir.1990) (defendant had successfully completed burglary and made his escape when police officer, who defendant assaulted, approached defendant to question him).

III.

■ Before computing Aloi's sentence under the guidelines, the Court must determine whether a departure from the guidelines sentence would be warranted because of aggravating or mitigating circumstances not adequately taken into consideration by the Sentencing Commission. *U.S. v. Davern,* 937 F.2d 1041 (6th Cir.1991). In this case, Aloi requests a downward departure, with reference to U.S.S.G. § 5K2.0. As the Sixth Circuit recognized in *Davern,* the grounds for such a departure must be considered *before* computing the guidelines range. *See* 18 U.S.C. § 3553(a), (b).

In requesting a downward departure, Aloi emphasizes his military service between 1958 and 1962. He also notes the death of his father while he was incarcerated, and real estate problems regarding the farm on which he was living with his common law wife when he was arrested in October 1990. Aloi states that he voluntarily attended group therapy sessions at the Stark County Mental Health Department, and that he was actively pursuing employment. Aloi also indicates that he has a cosmetology license, and that he is currently working on an associate degree.

In this Court's view, Aloi has not offered any persuasive reasons why these are the sort of mitigating factors or unusual circumstances which would justify a downward departure. Unlike the factors in dispute in *Davern,* for example, these matters are unrelated to the facts of the crime for which Aloi was convicted, and therefore would not mitigate his offense. Moreover, while these factors might indicate that the Court should have some sympathy for Aloi, other facts indicate precisely the contrary—specifically, that, since 1972, the longest Aloi has managed to stay out of prison has been three years. *See U.S. v. McCaleb,* 908 F.2d 176, 179 (7th Cir.1990) (district court properly declined to make

downward departure, notwithstanding defendant's military record).

## IV.

The Court must also address several objections which Aloi makes to his PSR. Some of these objections are moot, based on the Court's determination that the ACCA does not apply in this case. Other objections concern the PSR's computation of Aloi's criminal history category. For the reasons stated in section I.B of this opinion, those objections are overruled. Aloi's remaining pertinent objections are as follows:

■ (1) Aloi objects to the PSR's characterization of his arrest—he states that he "was not 'stopped by another police officer' ", but that he abandoned his flight and voluntarily surrendered. At trial, the evidence indicated that Aloi initially ran when a police officer discovered that he was in possession of firearms. The police chief was in the vicinity, and started after him. However, both men quickly became exhausted before they traveled more than 100 yards, at which point Aloi surrendered. The characterization of these facts is not critical to the Court's sentencing decision. The fact that Aloi briefly ran from the police will not, in itself, disqualify him from consideration for a downward departure based on acceptance of responsibility.

■ (2) Aloi notes that his 1964 conviction for grand larceny, for which he received a suspended sentence, was the result of an uncounseled plea of guilty. Of course, such an unconstitutional conviction cannot be used for purposes of determining the sentence in this case. *See U.S. v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). However, since Aloi completed his sentence for that conviction more than 15 years ago, it has not been used to compute his criminal history category. U.S.S.G. § 4A1.2(e)(2). Moreover, in accordance with the Supreme Court's mandate in *Tucker*, this Court will not consider Aloi's 1964 conviction in determining an appropriate sentence.

Aloi makes a similar claim regarding his 1967 conviction. Again, however, he completed his sentence for that conviction more than 15 years ago, so it has not been used to compute his criminal history category. The Court also will ignore that conviction in fashioning an appropriate sentence.

## V.

■ Finally, the Court must determine whether Aloi's sentence should be reduced by two points for acceptance of responsibility. Aloi has objected to the PSR's failure to recommend such a reduction, and the Court has given him an opportunity to make a statement prior to sentencing.

The fact that Aloi chose to go to trial does not preclude him from receiving credit for acceptance of responsibility, U.S.S.G. § 3E1.1(b), so long as the Court concludes that he "clearly demonstrates a recognition of affirmative acceptance of personal responsibility for his criminal conduct," U.S.S.G. § 3E1.1(a). Whether or not Aloi has demonstrated, by a preponderance of the evidence, that he has accepted responsibility for his crime is a factual determination to made by the sentencing court. *U.S. v. Williams*, 940 F.2d 176, 181 (6th Cir. 1991); *U.S. v. Wilson*, 878 F.2d 921, 923 (6th Cir.1989). However, as the court of appeals recently pointed out in *Williams*, "a defendant who expresses regret for the results of criminal conduct without admitting criminal intent does not accept responsibility within the meaning of the Sentencing Guidelines." At 183 (citations omitted). Similarly, "an admission that a defendant has used poor judgment in getting involved in a situation is not an acceptance of responsibility," *Id.* (citations omitted). At sentencing, Aloi did no more than express regret for the consequences of his actions. Thus, the Court will not reduce his sentence for acceptance of responsibility. He did not admit criminal intent.

## VI.

Before imposing sentence, the Court notes what it hopes is an obvious defect in the sentencing scheme under the ACCA

and the sentencing guidelines. In order to determine whether the mandatory minimum of 15 years applies, this Court has been forced to rely on stale and unreliable evidence of state court convictions which occurred 12 and 24 years ago. Moreover, based upon this evidence, and upon fine, legal distinctions—indeed, classic examples of "technicalities"—the Court is called upon to sentence Aloi to somewhere in the range of 21 to 27 months, or to impose a sentence of 180 months or more. In fact, the government seeks a sentence of at least 188 months. The difference in the two possible sentences is approximately 13 years, which, in this Court's opinion, creates an intolerably arbitrary sentencing law.

To summarize: Aloi's criminal history score of 9 points places him in criminal history category IV. With a base offense level of 12, the guidelines mandate a sentence of 21–27 months. Upon consideration of the entire record, including the PSR and Aloi's objections, the Court concludes that Aloi should be sentenced in the upper end of that range: 27 months. While Aloi is not a "career criminal" within the meaning of the ACCA, he has a serious criminal record. Therefore, it is appropriate to sentence him to 27 months in prison, followed by four years of supervised release.[14] Of course, Aloi is entitled to credit for the time he has served thus far, since his arrest on October 9, 1991, including any time he served in state custody which was related to *this* offense. *U.S. v. Wilson*, 916 F.2d 1115, 1119 (6th Cir.1990).

IT IS SO ORDERED.

---

14. The Court also notes that Aloi is currently under a state detainer, because this offense also constituted a violation of his parole. Thus, the public will not be endangered simply because Aloi will be released from his *federal* sentence in approximately 17 months. The Court understands that Aloi may face up to thirty additional years in Ohio prisons.