**Douglas WALDRON Petitioner**

v.

**Wanza JACKSON, Warden Respondent**

No. 1:02–CV–1482.

United States District Court, N.D. Ohio, Eastern Division.

Oct. 15, 2004.

Molly J. McAnespie, Office of the Public Defender, State of Ohio, Columbus, OH, for Plaintiff.

M. Scott Criss, Office of the Attorney General, State of Ohio, Corrections Litigation Section, Columbus, OH, for Defendant.

## MEMORANDUM OF OPINION AND ORDER DECLINING TO ACCEPT THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, DENYING RESPONDENT'S MOTION TO DISMISS, AND GRANTING WRIT OF HABEAS CORPUS

WELLS, District Judge.

Before this Court is Respondent's motion to dismiss petitioner Douglas Waldron's petition for a writ of habeas corpus as time-barred by 28 U.S.C. § 2244(d)'s one-year statute of limitations. (Docket # 12). The case was referred to United States Magistrate Judge James S. Gallas for a Report and Recommendation ("R & R"). (Docket # 7). Magistrate Judge Gallas considered the petition, respondent's motion to dismiss, petitioner's response to the motion to dismiss and traverse, and respondent's reply (Docket # 1, # 12, # 17, and # 20). On 7 August 2003, Magistrate Judge Gallas filed his R & R, recommending that the petition be dismissed as time-barred. (Docket # 21). Petitioner then filed objections to the R & R. (Docket # 22).

For the reasons set forth below, this Court declines to accept the Magistrate Judge's recommendation, denies respondent's motion to dismiss, and grants petitioner's habeas corpus petition.

## I. BACKGROUND

On 11 December 1997, a Cuyahoga County grand jury indicted Mr. Waldron on two counts of rape, in violation of Ohio

R.C. § 2907.02, and two counts of compelling prostitution, in violation of Ohio R.C. § 2907.21. (Docket # 14, Ex. A). Both rape counts contained sexually violent predator and repeat violent offender specifications. (Docket # 14, Ex. A). On 5 February 1998, Mr. Waldron was found to be incompetent and was sent to Twin Valley Psychiatric Center for treatment. (Docket # 14, Exs. B and Tr. at 4–7).[1] On 23 April 1998, the trial court determined that Mr. Waldron had been restored to competency for trial. (Docket # 14, Exs. C and Tr. at 8–10).

Following a jury trial, Mr. Waldron was convicted of all four counts alleged in the indictment. (Docket # 14, Ex. D). On 6 August 1998, the trial court sentenced Mr. Waldron to prison terms of 19 years to life on both rape counts, including his sentence on the repeat violent offenders specification, and 7 years on both counts of compelling prosecution. (Docket # 14, Ex. D and Tr. at 707). As the court ordered all sentences to be served consecutively, Mr. Waldron is currently serving an aggregate prison term of 52 years to life. (Docket # 14, Ex. D). During sentencing, the trial court advised Mr. Waldron of his appellate rights and asked him if he wished to appeal. (Tr. at 708). Both Mr. Waldron and his attorney responded that Mr. Waldron intended to pursue an appeal. (Tr. at 708). The trial court then determined that Mr. Waldron was indigent and appointed attorney James Ingalls to represent him on appeal. (Tr. at 708).

Because Mr. Waldron's judgment entry of conviction and sentence was filed in the trial court on 11 August 1998 (Docket # 14, Ex. D), Mr. Waldron had until 10 September 1998 to file a timely notice of appeal. *See* Ohio App. R. 4(A) (requiring defendants to file a notice of appeal within 30 days "of entry of the judgment or order appealed ...."). Mr. Ingalls, Mr. Waldron's court-appointed appellate counsel, missed that deadline by four days, filing a notice of appeal on 14 September 1998. (Docket # 14, Ex. F). On 11 January 1999, the court of appeals dismissed *sua sponte* Mr. Waldron's appeal as untimely. (Docket # 14, Ex. G). According to Mr. Waldron, his appellate counsel did not notify him that the court of appeals had dismissed his appeal. (Waldron Aff. at ¶¶ 5–6).[2] Eventually, Mr. Waldron asked a friend to contact the court of appeals about his appeal and consequently learned, for the first time, that it had been dismissed. (Waldron Aff. at ¶ 7). He then sought assistance from the Office of the Ohio Public Defender. (Waldron Aff. at ¶ 8).

On 10 September 2001, the Ohio Public Defender filed, on Mr. Waldron's behalf, a motion for leave to file a delayed appeal, pursuant to Ohio App. R. 5(A). (Docket # 14, Ex. H). On 15 October 2001, the court of appeals denied Mr. Waldron's motion for leave. (Docket # 14, Ex. I). Shortly thereafter, Mr. Waldron filed a motion for reconsideration which the court of appeals also denied on 20 November 2001. (Docket # 14, Exs. J and K). On 26 November 2001 and 3 January 2002, Mr. Waldron appealed both rulings to the Ohio Supreme Court. (Docket # 14, Exs. L and N). The Ohio Supreme Court, on 6 February 2002 and 20 March 2002, denied leave to appeal and dismissed both appeals as not involving any substantial constitutional question. (Docket # 14, Exs. M and P).

On 29 July 2002, Mr. Waldron filed a petition for a federal writ of habeas cor-

---

1. "Tr." refers to the transcript of the state court proceedings, portions of which are included as Exhibit H to Docket # 14.

2. Douglas Waldron's affidavit is attached in Exhibit H to Docket # 14.

pus, pursuant to 28 U.S.C. § 2254, in which he asserts two grounds for relief:

**Ground 1:** Petitioner was denied his Sixth and Fourteenth Amendment right to appeal his conviction.

**Ground 2:** Petitioner was denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel on appeal.

## II. RESPONDENT'S MOTION TO DISMISS, MAGISTRATE JUDGE'S R & R, AND PETITIONER'S OBJECTIONS

In her motion to dismiss, respondent contends that Mr. Waldron's habeas petition must be dismissed as barred by AEDPA's one-year statute of limitations. Respondent argues that the statute of limitations began to run on 10 September 1998 (upon expiration of the time for seeking direct review) and was only tolled from when Mr. Waldron filed his notice of appeal on 14 September 1998 until 11 January 1999 when the Ohio Court of Appeals dismissed his appeal as untimely. (Docket # 12, at 5–6). Restarting on 11 January 1999, respondent therefore asserts that Mr. Waldron's statute of limitations expired on 7 January 2000—well before he filed his delayed appeal. (Docket # 12, at 6).

Mr. Waldron responds that his habeas petition was in fact timely filed for one of the following reasons:

1) The statute of limitations, pursuant to 28 U.S.C. § 2244(d)(1)(A), did not begin to run until 18 June 2002, the expiration of his time for filing a certiorari petition in the United States Supreme Court regarding the dismissal of his delayed appeal.

2) The statute of limitations has still not begun to run because his counsel's ineffectiveness manifested in failing to file a timely appeal is imputed to the State and constitutes, pursuant to 28 U.S.C. § 2244(d)(1)(B), an ongoing state-created impediment to the filing of his habeas petition.

3) The statute of limitations was equitably tolled during the period of time between the dismissal of Mr. Waldron's direct appeal and the filing of his delayed appeal.

(Docket # 17, at 6–16).

After considering each of Mr. Waldron's arguments, the Magistrate Judge recommended that respondent's motion to dismiss be granted because Mr. Waldron's habeas petition was untimely. (R & R at 12–13). In reaching that conclusion, the Magistrate Judge found that the statute of limitations is not restarted by the filing of a motion for delayed appeal, that Mr. Waldron's appellate counsel's ineffectiveness did not constitute a state-created impediment preventing the filing of his petition, and that Mr. Waldron is not entitled to equitable tolling because he has not demonstrated diligence or a reasonable excuse. (R & R at 3–12). Mr. Waldron filed objections to each of the Magistrate Judge's conclusions. (Docket # 22). Respondent filed no objections or response.

## III. ANALYSIS

Under Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(C), this Court reviews *de novo* the portion of the Magistrate Judge's report and recommendation to which specific objection was made. Upon review, this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Though it agrees with portions of the Magistrate Judge's R & R, this Court declines to accept his recommendation that Mr. Waldron's petition was time-barred. After finding that Mr. Waldron's habeas petition was timely filed due to the operation of 28 U.S.C. § 2244(d)(1)(B), the Court contin-

ues to an analysis of the merits of his petition.

## A. Statute of Limitations

Under federal law, habeas corpus petitions must be filed within a one-year limitations period established by 28 U.S.C. § 2244(d). That section provides, in pertinent part:

A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). This one-year period does not include time during which a properly filed application for post-conviction or other collateral review is pending in the state courts. 28 U.S.C. § 2244(d)(2); see Carey v. Saffold, 536 U.S. 214, 216–17, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002).

Section 2244(d)(1) provides that AEDPA's statute of limitations does not begin to run until the latest of four possible dates. After a discussion of the parties' arguments and the Magistrate Judge's conclusions regarding the starting date for the statute of limitations based on Sections 2244(d)(1)(A) and 2244(d)(1)(B), the Court briefly discusses the potential applicability of Section 2244(d)(1)(D) and equitable tolling.

### 1. Section 2244(d)(1)(A)

Section 2244(d)(1)(A) provides that AEDPA's statute of limitations does not begin to run until at least "the date on which judgment became final by the conclusion of direct review." Petitioner urges that this date is 18 June 2002, ninety days after the Ohio Supreme Court dismissed his delayed appeal. His position rests on the untenable proposition that, if a defendant fails to file a timely appeal, the statute of limitations does not begin to run until or is restarted after he or she files a delayed appeal. The Magistrate Judge disagreed and correctly concluded that Mr. Waldron's judgment actually became final on 10 September 1998, at the expiration of time for seeking direct review, and was only tolled during the pendency of Mr. Waldron's delayed appeal.

■ A delayed appeal to the Ohio Supreme Court is not part of a petitioner's direct appeal but instead is considered post-conviction or collateral relief which tolls the statute of limitations only for as long as the delayed appeal is before the court. Searcy v. Carter, 246 F.3d 515, 518–19 (6th Cir.2001). Mr. Waldron does not disagree that Searcy stands in direct opposition to his proposition; rather he contends its holding has been altered by the Supreme Court's decision in Carey v. Saffold, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002). Here Mr. Waldron errs as the Sixth Circuit has continued to adhere to Searcy's holding after Carey was decided. Hargrove v. Brigano, 300 F.3d 717, 718 n. 1 (6th Cir.2002); Winkfield v. Bagley, 66 Fed.Appx. 578, 582 (6th Cir. May 28, 2003). In fact, the Sixth

Circuit, albeit in an unreported decision, explicitly rejected the argument that *Carey* abrogated *Searcy.* *Fuller v. Thomas,* 2004 WL 1922179 (6th Cir. Aug.27, 2004) (noting, among other things, that *Carey* was distinguishable because it involved a petitioner who had properly filed an earlier state collateral attack).

As explained by the Sixth Circuit, *Carey* addressed the definition of pending in Section 2244(d)(2), held that an application remains pending until "it has achieved final resolution through the State's post-conviction procedures," and concluded that "an application for state post-conviction relief is pending even during the period between one state court's decision and the litigant's appeal to the next level." *Abela v. Martin,* 348 F.3d 164, 166 (6th Cir.2003). Notwithstanding Mr. Waldron's protestations to the contrary, *Carey* does not hold or even suggest that the filing of an application for collateral relief, such a delayed appeal, restarts the limitations period. Such a conclusion would substantially render AEDPA's one-year time limit ineffectual.

Because Mr. Waldron "cannot indefinitely delay the running of the statute of limitations in a federal habeas action by filing a delayed appeal in state court," *Searcy,* 246 F.3d at 516, his contention that his petition was timely filed, pursuant to Section 2244(d)(1)(A), is unavailing. Based solely on Section 2244(d)(1)(A), Mr. Waldron's limitations period would begin to run on 11 September 1998. Though the limitations period would be tolled during the pendency of Mr. Waldron's motion for leave to file a delayed appeal, pursuant to Section 2244(d)(2), it would still have expired prior to the filing of Mr. Waldron's petition.

### 2. *Section 2244(d)(1)(B)*

Having determined that the date proscribed by Section 2244(d)(1)(A) would render Mr. Waldron's petition untimely, this Court next considers the applicability of Section 2244(d)(1)(B). Section 2244(d)(1)(B) provides that the statute of limitations does not begin to run until at least:

> the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action.

Here petitioner argues that an unconstitutional state-created impediment-the ineffective assistance of his appellate counsel-prevented him from "timely pursuing his appeal." (Docket # 22, at 11). While the Magistrate Judge agreed that ineffective assistance of counsel on an initial appeal constitutes an state-created impediment, he nonetheless concluded that Section 2244(d)(1)(B) was inapplicable in this case because there was "no allegation that appellate counsel's ineffectiveness prevented or inhibited further pursuit of an appeal." (R & R at 6).

■ In this case, it is evident that Mr. Waldron's appellate counsel was constitutionally ineffective because his counsel failed to perfect a timely appeal in direct contravention of Mr. Waldron's wishes. *Roe v. Flores–Ortega,* 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (explaining that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable"); *White v. Schotten,* 201 F.3d 743, 752 (6th Cir.2000) (concluding that an attorney's failure to abide by "established time deadlines in handling a client's appeal is conduct falling below the minimal standards of competency that federal case law has imposed upon counsel to satisfy constitutional safeguards"); *Ludwig v. U.S.,* 162 F.3d 456, 459 (6th Cir.1998) (holding that "the failure

to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment").

The evidence in this case demonstrates that Mr. Waldron's appellate counsel was aware of Mr. Waldron's desire to file an appeal, a fact not disputed by the respondent. Mr. Waldron first stated his desire to appeal at the time of sentencing, and the trial court specially appointed appellate counsel to represent Mr. Waldron on his direct appeal. (Tr. at 708). Though Mr. Waldron never directly spoke with Mr. Ingalls prior to the expiration of his deadline to appeal, Mr. Ingalls' filing of a notice of appeal four days late demonstrates that he understood Mr. Waldron's desire to appeal was unequivocal. (Waldron Aff. at ¶ 5). However, even if Mr. Waldron's desire to appeal was somehow unclear, his counsel would nonetheless have been constitutionally ineffective for failing to consult with Mr. Waldron about an appeal because, as Mr. Waldron's appointed appellate counsel, he had reason to think that Mr. Waldron was interested in appealing. *See Roe*, 528 U.S. at 480, 120 S.Ct. 1029.

Likewise, as both the Magistrate Judge and Mr. Waldron agree, this ineffective assistance of counsel is imputed to the state, *Murray v. Carrier*, 477 U.S. 478, 489, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) and constitutes an impediment to filing an application created by the state, *Winkfield v. Bagley*, 66 Fed.Appx. 578, 582 (6th Cir. May 28, 2003). The remaining question therefore is whether the state action, Mr. Ingalls' ineffective assistance, actually prevented Mr. Waldron from filing a timely habeas petition. According to the Sixth Circuit's unreported decision in *Winkfield*, Section 2244(d)(1)(B) requires a "causal relationship between the unconstitutional state action and being prevented from filing the petition." *Id.* at 583. In his objections to the Magistrate Judge's R & R, Mr. Waldron explains the causal relationship as follows: 1) his counsel was ineffective by failing to file a timely notice of appeal; 2) his Rule 5(a) delayed appeal was only necessary because of his appellate counsel's ineffective assistance; 3) he could not have brought this habeas action until the claim contained in the petition had first been presented to and exhausted in state court, including the filing of a delayed appeal. (Docket # 22, at 10). Each of these three assertions are unassailable as Mr. Ingalls' ineffectiveness was already demonstrated above, as his counsel's ineffectiveness clearly created the need to file a delayed appeal, and as the filing of a delayed appeal is a necessary step in exhausting Mr. Waldron's state remedies and "is a condition to seeking habeas corpus relief in the federal courts," *Dombkowski v. Johnson*, 488 F.2d 68, 70 (6th Cir.1973); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994); *see Hargrove v. Brigano*, 300 F.3d 717, 720 (6th Cir.2002) (recognizing that the filing a delayed appeal in the Ohio Supreme Court was necessary to exhaust a claim).

Focusing on the "causal relationship" requirement identified in *Winkfield*, the Magistrate Judge nonetheless concluded that Mr. Waldron failed to allege facts demonstrating that he was so inhibited by the state's action that he was unable to file a timely petition. (R & R, at 6). It is with this conclusion that this Court disagrees. This Court respectfully submits that such a conclusion fails to fully consider the impact of Mr. Waldron's ineffective counsel in delaying the entire appeals and collateral review process. As noted by the Sixth Circuit in *Ludwig:*

> A lawyer's failure to file a requested appeal at the behest of a defendant is particularly problematic because it does not merely deprive the defendant of effective assistance of counsel, it deprives him of the assistance of any counsel altogether.

162 F.3d at 459. Abruptly left without the assistance of counsel, Mr. Waldron may not have been ultimately prevented from filing a habeas petition but he was prevented from filing a timely habeas petition. To find no causal relationship between the ineffective assistance of counsel, the resulting delay associated with his Rule 5(A) motion, and the untimely habeas petition ignores reality and fails to fully incorporate the purpose behind a defendant's constitutional right to effective assistance of counsel on their initial appeal. As explained by the United States Supreme Court:

> In bringing an appeal as of right from his conviction, a criminal defendant is attempting to demonstrate that the conviction, with its consequent drastic loss of liberty, is unlawful. To prosecute the appeal, a criminal appellant must face an adversary proceeding that-like a trial-is governed by intricate rules that to a layperson would be hopelessly forbidding. An unrepresented appellant-like an unrepresented defendant at trial-is unable to protect the vital interests at stake.

*Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Accordingly, the state-created impediment does not simply evaporate once Mr. Waldron's counsel failed to file a timely appeal; rather, its effects reverberate over time, forcing the filing of a delayed appeal and necessarily delaying the filing of his habeas petition. To find Mr. Waldron's petition untimely because he did not more quickly overcome the state-created impediment would necessarily punish him for a constitutional violation by the State. Such a result is precisely what Section 2244(d)(1)(B) is designed to avoid by ensuring that a state-created impediment does not prevent the timely filing of a habeas petition.

■ In applying Section 2244(d)(1)(B), the Court must therefore consider the impact Mr. Waldron's ineffective assistance of counsel had on his ability to file a timely petition and, if possible, identify the point in time that the state-created impediment was removed. In answer to these questions, in the context of Mr. Waldron's counsel's failure to timely file a notice of appeal, at least three conclusions could be reached. First, assuming that the only relevant consideration is whether Mr. Waldron's ineffective assistance of counsel ultimately prevented the filing of his petition at all—a nonsensical approach which would completely eviscerate Section 2244(d)(1)(B) rendering it all but inapplicable in every case, one could conclude that the interim impact and timing of the removal of the state-created impediment was of no consequence.[3] Second, one could attempt to identify when Mr. Waldron should have discovered his counsel's failure to file a timely appeal and then taken action on his own, or with new counsel, to exhaust his state remedies and file a timely habeas petition. Finally, one could conclude that Mr. Waldron's counsel's constitutional ineffectiveness in failing to perfect a first appeal of right constituted a state-created impediment which cannot be rectified absent the allowance of such an appeal and that Mr. Waldron's habeas clock did not begin until the disposition of his motion for leave to file a delayed appeal.

■ Although the Sixth Circuit's unreported decision in *Winkfield* appears somewhat inconsistent with the latter approach, this Court finds that alternative most consistent with the purpose of Section 2244(d)(1)(B) and most appropriate

---

**3.** Such an approach makes little sense because the operation of AEDPA's statute of limitations' provisions assumes that a habeas petition has been filed.

because of its clarity and its likelihood to protect a defendant's ability to appeal and to preserve his constitutional right to effective assistance of counsel.[4] Given that the State created the constitutional impediment to the perfection of Mr. Waldron's appeal, it should not benefit from the subsequent delay created by that violation. Because the petitioner's state claims remain unexhausted until he or she files a motion for a delayed appeal, his ineffective assistance of counsel in filing a timely appeal continues to prevent his filing of a federal habeas petition until the resolution of his delayed appeal. Once the petitioner's delayed appeal has been finally ruled on by the state courts and the ninety day period for filing certiorari with the United States Supreme Court has expired, his or her habeas limitations' period begins to run.

In this case, Mr. Waldron's Rule 5(a) motion for leave to file a delayed appeal was denied by the Ohio Supreme Court on 6 February 2002. Accordingly, Mr. Waldron's AEDPA statute of limitations began to run ninety days later on 8 May 2002. Because Mr. Waldron filed his petition on 29 July 2002, 82 days later, his habeas petition was timely filed.

### 3. *Section 2244(d)(1)(D)*

Although the parties did not explicitly address Section 2244(d)(1)(D), it merits discussion because of its potential impact on the operation of AEDPA's limitation's period. Section 2244(d)(1)(D) provides that the statute of limitations does not begin to run until at least "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Because one of Mr. Waldron's claims relates to the ineffectiveness of his appellate counsel due to his failure to file a timely notice of appeal, the statute of limitations did not begin to run until he could have discovered the failure to file a timely appeal through the exercise of due diligence. Although Mr. Waldron could have discovered his counsel's failure on the day following the expiration of his time for filing an appeal, a requirement that he do so "ignores the reality of the prison system and imposes an unreasonable burden on prisoners seeking to appeal." *Granger v. Hurt*, 90 Fed.Appx. 97, 100 (6th Cir. Jan.23, 2004). In *Granger*, the Sixth Circuit held that waiting two months to inquire about the status of an appeal "was not beyond 'the exercise of due diligence'" and that, pursuant to Section 2244(d)(1)(D), the statute of limitations did not begin to run until after he learned from his inquiry that no appeal had been filed. *Id.* at 100.

In this case, Section 2244(d)(1)(D) is applicable to both grounds raised by Mr. Waldron's petition—denial of his rights to appeal his conviction and to the effective assistance of counsel on appeal. At what point Mr. Waldron could have discovered the factual predicate of these two claims through the exercise of due diligence is critical to the application of Section 2244(d)(1)(D) and would require further factual development. However, given this Court's application of Section 2244(d)(1)(B)

---

4. Though *Winkfield* involved slightly different circumstances as the petitioner was granted leave to file a delayed appeal in state court, 66 Fed.Appx. at 580–81, this Court recognizes that decision is not entirely supportive of the approach taken here. However, because *Winkfield* is an unreported decision, it does not constitute binding precedent within the Sixth Circuit. *See U.S. v. Orlando*, 363 F.3d 596, 602 (6th Cir.2004); *Sheets v. Moore*, 97 F.3d 164, 167 (6th Cir.1996) (explaining that, in the Sixth Circuit, unpublished decisions "carry no precedential weight [and] have no binding effect on anyone other than the parties to the action"); *Stone v. William Beaumont Hospital*, 782 F.2d 609, 614 n. 4 (6th Cir.1986); *Kinney v. City of Cleveland*, 144 F.Supp.2d 908, 918 n. 4 (N.D.Ohio 2001).

and its finding that Mr. Waldron's petition was otherwise timely filed, this factual inquiry is unnecessary.

### 4. *Equitable Tolling*

▮ Besides his statutory arguments, Mr. Waldron argues that the time period between 11 January 1999 (the court of appeals' dismissal of Mr. Waldron's untimely appeal) and 10 September 2001 (the filing of Mr. Waldron's motion for leave to file a delayed appeal) should be equitably tolled. (Docket # 22, at 13). Because AEDPA's one-year statute of limitations is not a jurisdictional prerequisite, a petitioner who otherwise misses the deadline may still maintain a viable habeas action if equitable tolling is appropriate. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir.2004) (citing *Dunlap v. U.S.*, 250 F.3d 1001, 1007 (6th Cir.2001)). Though not necessarily representing a comprehensive list of factors relevant to every case, *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir.2003), courts generally consider the following factors in determining whether equitable tolling should apply:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Dunlap*, 250 F.3d at 1008. Ultimately, the decision to apply equitable tolling to a limitations period must be resolved on a case-by-case basis. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir.2002).

While several of these factors support equitable relief, as noted by the Magistrate Judge, the record would require further development in order to ascertain whether Mr. Waldron was diligent in pursuing his rights. *See e.g., Woods v. Brigano*, 90 Fed.Appx. 466, 468 (6th Cir. Feb.19, 2004) (explaining that further factual development was necessary to determine whether a two-year delay in filing a motion for delayed appeal constituted a lack of diligence precluding equitable tolling); *Miller v. Collins*, 305 F.3d 491, 495–96 (6th Cir. 2002) (applying equitable tolling based on petitioner's failure to receive notice of state court decision and noting that "[f]rom a litigant's perspective, it is a difficult, if not impossible endeavor, to estimate how long a reviewing court will take to decide a particular motion"). Given the Court's ruling regarding the application of AEDPA's statute of limitations, it need not resolve Mr. Waldron's equitable tolling argument.

## B. Merits

Having determined that Mr. Waldron's petition was timely filed, the Court proceeds to consider the merits of his petition.

### 1. *Standard of Review*

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and 'to further the principles of comity, finality, and federalism.'" *Woodford v. Garceau*, 538 U.S. 202, 206, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003) (*citing Williams v. Taylor*, 529 U.S. 362, 364, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). In advancing such goals, Section 2254(d) places new constraints on "the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams*, 529 U.S. at 412, 120 S.Ct. 1495. Section 2254(d) provides

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

■ By its express terms, however, Section 2254(d) only applies to claims that were adjudicated on the merits in the state court proceeding. *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir.2004). When a state court does not assess the merits of a petitioner's habeas claim, the deference due under AEDPA does not apply. *Id.*; *Newton v. Million*, 349 F.3d 873, 878 (6th Cir.2003); *Maples v. Stegall*, 340 F.3d 433, 436–37 (6th Cir.2003).[5] In such a case, the habeas court is not limited to deciding whether that court's decision was contrary to or involved an unreasonable application of clearly established federal, but rather conducts a *de novo* review of the claim. *Maples*, 340 F.3d at 436–37; *Benge v. Johnson*, 312 F.Supp.2d 978, 987 (S.D.Ohio 2004).

In this case, Mr. Waldron's Rule 5(a) motion for leave to file a delayed appeal was summarily denied by both the Ohio Court of Appeals and the Ohio Supreme Court. On 15 October 2001, the Ohio Court of Appeals simply stated that "motion by appellant for leave to file a delayed appeal is denied." (Docket # 14, Ex. I). The Ohio Supreme Court, on 20 March 2002, affirmed that decision, concluding that:

Upon consideration of the jurisdictional memoranda filed in this case, the Court denies leave to appeal and dismisses the appeal as not involving any substantial constitutional question.

(Docket # 14, Ex. M). Because the state courts did not assess the merits of Mr. Waldron's Sixth and Fourteenth Amendment arguments regarding ineffective assistance of counsel and the denial of his right to appeal, this Court conducts a *de novo* review of his claims.

### 2. *Analysis of Merits*

■ In his two grounds for relief, petitioner raises two interrelated constitutional arguments. First, he contends that he was denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel on appeal because his appellate counsel failed to file a timely appeal. A defendant is entitled to effective assistance of counsel in his first appeal as a matter of right. *Smith v. Robbins*, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Evitts*, 469 U.S. at 396–97. As already explained above in conjunction with the Court's discussion of Section 2244(d)(1)(B), Mr. Waldron was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution due to his appellate counsel's failure to timely perfect an appeal.

In Mr. Waldron's second ground for relief, he claims that he was denied his Fourteenth Amendment right to appeal his conviction and sentence.[6] Specifically, Mr. Waldron argues that due process man-

---

**5.** Prior to *Maples,* the Sixth Circuit had applied the AEDPA standard of review to claims which had not been explicitly mentioned or analyzed by the state courts. *See e.g., Doan v. Brigano,* 237 F.3d 722, 727 (6th Cir.2001); *Clifford v. Chandler,* 333 F.3d 724, 730 (6th Cir.2003). However, in *Maples,* the Sixth Circuit found that *Doan* and *Clifford* had been

abrogated by the United States Supreme Court's decision in *Wiggins v. Smith,* 539 U.S. 510, 534–38, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). 340 F.3d at 437.

**6.** Though Mr. Waldron also cites the Sixth Amendment in conjunction with this claim in his petition, he exclusively frames his consti-

dates that a defendant may not be deprived of his right to appeal and to appellate counsel "without an affirmative finding that the defendant has knowingly, voluntarily, and intelligently waived his right to an appeal and appellate counsel." (Docket # 17, at 27). In essence, the petitioner suggests that due process imposes some constraints on Ohio court's ability to deny motions for leave to file a delayed appeal.

 While a state is not required by the federal constitution to provide a mechanism of appeal for criminal defendants, a state that has elected to provide a process of appellate review must do so consistent with the requirements of due process and equal protection. *Griffin v. People,* 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *Lopez v. Wilson,* 355 F.3d 931, 939 (6th Cir.2004).[7] In order to comport with due process and equal protection, a state must provide an indigent defendant with counsel on his or her first appeal of right from a criminal conviction. *Douglas v. California,* 372 U.S. 353, 355–58, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). In *Evitts,* the Supreme Court further explained that due process requires that defendants receive effective assistance of counsel on their first appeal of right. 469 U.S. at 396–97, 105 S.Ct. 830.[8] Elaborating on the interrelationship between a defendant's right to appeal and their right to effective assistance of counsel, the United States Supreme Court explained:

> A system of appeal as of right is established precisely to assure that only those who are validly convicted have their freedom drastically curtailed. A State may not extinguish this right because another right of the appellant—the right to effective assistance of counsel—has been violated.

*Evitts,* 469 U.S. at 399–400, 105 S.Ct. 830. In other words, it is a violation of due process not only to arbitrarily deny a defendant's appeal of right, but also to foreclose appellate review based on a defendant's ineffective assistance of counsel.

Though decided prior to *Evitts,* the Sixth Circuit has, consistent with *Evitts'* holding, concluded that the denial of a criminal defendant's constitutional right to appeal may result from the failure of counsel "to perfect an appeal when the facts in the case impose a duty upon him to do so." *Boyd v. Cowan,* 494 F.2d 338, 339 (6th Cir.1974). Since *Evitts,* the Sixth Circuit has consistently held that a defendant, who sought to appeal his conviction, but whose counsel failed to properly perfect an appeal, was entitled to a delayed appeal. 162 F.3d at 459; *see also U.S. v. Leachman,* 309 F.3d 377, 380 n. 4 (6th Cir.2002); *Carrion v. U.S.,* 2004 WL 1859346 (6th Cir. Aug.17, 2004).[9]

tutional argument in the context of the Fourteenth Amendment.

7. There is no dispute that, in Ohio, defendant's initial appeal is a matter of right. *See Warner v. U.S.,* 975 F.2d 1207, 1213 (6th Cir.1992); *State v. Sims,* 27 Ohio St.2d 79, 81–82, 272 N.E.2d 87 (1971); O.R.C. § 2953.02; Ohio App. R. 3 and 4.

8. As indigent defendants do not have the right to bring frivolous appeals or have the right to counsel in bringing frivolous appeals, a state's appellate procedures are constitutionally sufficient as long as they provide a review which "reasonably ensures that an indigent's appeal will be resolved in a way that is related to the merit of that appeal." *Smith v. Robbins,* 528 U.S. 259, 276–78, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Penson v. Ohio,* 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). However, as neither party has suggested that this case implicates any particular procedure designed by Ohio for processing indigent appeals, *Anders* and its progeny are inapplicable.

9. While *Ludwig, Leachman,* and *Carrion* involved federal defendants whose counsel failed to perfect a timely appeal in federal court, this distinction does not undermine their reasoning which is equally applicable in the state court context.

Applying these mandates to the present case, it is evident that Mr. Waldron was denied due process when his Rule 5(A) motion for leave to file a delayed appeal was denied. Because Mr. Waldron's failure to perfect his appeal rested squarely on the ineffective assistance of his appellate counsel, the state courts refusal to allow a delayed appeal amounts to a due process violation.

## IV. *Conclusion*

Because, pursuant to 28 U.S.C. 2244(d)(1)(B), Mr. Waldron's habeas limitations' period did not begin to run until 8 May 2002, his habeas corpus petition was timely filed. Accordingly, this Court declines to accept the Magistrate Judge's recommendation to the contrary and denies respondent's motion to dismiss.

As to the merits of Mr. Waldron's petition, it implicates two interrelated, yet distinct, constitutional violations. First, because his appellate counsel failed to perfect a timely appeal, Mr. Waldron was denied effective assistance of counsel in contravention of the Sixth and Fourteenth Amendments. This initial constitutional violation was subsequently compounded by the denial of Mr. Waldron's Rule 5(A) motion for leave to file a delayed appeal, which deprived Mr. Waldron of his right to appeal and constituted a violation of the Due Process Clause of the Fourteenth Amendment.

Accordingly, Mr. Waldron's petition for a writ of habeas corpus is granted such that the respondent shall release Mr. Waldron from prison unless he is permitted to file a delayed appeal from his conviction *in forma pauperis* and with court-appointed counsel, within 90 days of Mr. Waldron's filing of a renewed Rule 5(a) motion for a delayed appeal with the Ohio Court of Appeals. The Court further orders respondent to notify this Court in writing upon the reinstatement of Mr. Waldron's appeal.

IT IS SO ORDERED.