NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 17a0112n.06

Case No. 14-5380

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 17, 2017
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| JOE EDWARD WEBB, | ) |
| | ) |
| *Petitioner-Appellant*, | ) |
| | ) |
| | ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR |
| | ) THE MIDDLE DISTRICT OF |
| UNITED STATES of AMERICA, | ) TENNESSEE |
| | ) |
| *Respondent-Appellee*. | ) |
| | ) |

Before: COLE, Chief Judge; BATCHELDER and COOK, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. The petitioner appeals the district court's judgment dismissing his motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Because the district court was correct in its determination that the petition was untimely, we AFFIRM.

**I.**

On January 15, 2010, Joe Webb entered guilty pleas to two counts of conspiracy to distribute cocaine and one count of attempting to possess with intent to distribute over 500 grams of cocaine. Webb had retained counsel, Edward DeWerff, and entered into a plea agreement in which he waived his right to appeal any sentence within the guidelines range. The presentence report (PSR) established Webb's guideline range at 262 to 327 months in prison (due to a career offender adjustment), with a 240 month statutory mandatory minimum. The district court sentenced Webb on January 7, 2011, and though affirming the PSR's calculated range, found that range excessive and instead sentenced Webb to 240 months for the conspiracy convictions and another 240 months for the attempt conviction, to run concurrently. Webb did not appeal.

On April 17, 2012—almost 15 months later—Webb filed a § 2255 motion to vacate, set aside, or correct his sentence, claiming that he received ineffective assistance of counsel during plea negotiations and sentencing because DeWerff had failed to recognize, argue, and/or preserve the applicability of the forthcoming Fair Sentencing Act amendments, which would have lowered the statutory mandatory minimum from 240 months to 120 months. Webb's theory was that the district court would have imposed a sentence lower than 240 months if it had known that the statutory mandatory minimum was 120 rather than 240 months.

The government moved to dismiss Webb's § 2255 petition because it was untimely, coming almost three months after the January 21, 2012 deadline. Webb sought equitable tolling, arguing ineffective assistance of counsel based on his claim that he had instructed attorney DeWerff to file the appeal but DeWerff had neglected to do so, while falsely assuring Webb that the appeal had been filed. Given this dispute of material fact, the district court ordered a magistrate judge to conduct an evidentiary hearing to determine whether Webb had truly instructed DeWerff to file the appeal or had otherwise expressed a desire for an appeal.

Following a hearing at which both Webb and DeWerff testified, the magistrate judge determined that Webb had not asked DeWerff to file an appeal. In finding Webb not credible, the magistrate judge cited his observation of Webb while testifying, Webb's lying to the prosecutor previously, and the inconsistencies in Webb's testimony. The magistrate judge found it "unbelievable" and "simply inconceivable" that Webb would have had three or four telephone conversations with DeWerff—conversations Webb admitted to having—without ever asking about the status of his appeal. Moreover, Webb asserted in his § 2255 motion that he had instructed DeWerff to appeal the "prior convictions issue" (underlying the career offender enhancement), but at the hearing said he had wanted to appeal the Fair Sentencing Act issue and had not discussed appealing the prior-convictions issue; but then changed his testimony when

challenged and said that he *had* asked DeWerff to appeal the prior-convictions issue. Webb also conceded that he had a copy of his docket report in August 2011 and was aware then that DeWerff had filed no appeal, but had not questioned DeWerff about it.[1] Webb tried to bolster his recollection of his claim that he had instructed DeWerff to appeal by tying it to his associated memory that he had given this instruction immediately after his sentencing and because the sentencing judge had said he had *10 days* to appeal, and he insisted on this story repeatedly. But the judge had actually said 14 days, as demonstrated by the transcript. Furthermore, the magistrate judge found that DeWerff was credible.

In his report, beyond finding that Webb did not actually instruct DeWerff to appeal, the magistrate judge opined on two other issues. First, he rejected Webb's argument based on *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)—i.e., that DeWerff was ineffective because he failed his duty to consult with Webb about an appeal, a duty which arose even if Webb had not expressly asked for any appeal—by finding that argument beyond the scope of the district court's narrow instruction and inapposite because *Flores-Ortega* applied to a defendant who had not waived any of his appeal rights as Webb had done. The magistrate judge also noted that, to obtain equitable tolling, Webb had to prove that despite his diligence "some extraordinary circumstance" prevented his timely filing, but that Webb had shown neither diligence, given that "he knew in August 2011, when he reviewed his docket sheet, that an appeal had not been filed, but he did nothing about it until April 2012," nor that "any extraordinary circumstance [] stood in his way of making a timely claim in this case." Based on all of this, the magistrate judge found the filing untimely and recommended that the district court grant the motion to dismiss.

---

[1] In August 2011, Webb had possession of his docket report and was concerned that certain entries revealed his cooperation with the government. Because the docket was publicly available, he feared reprisal if that cooperation were discovered. Webb contacted DeWerff and asked him to have those entries removed or redacted. Webb testified that he could read that docket report and understood from it that no appeal had been filed, and that he had not asked DeWerff about an appeal at that time or the absence of any appeal entry on that docket report.

3

In his objection to the magistrate judge's report, Webb essentially conceded that he had not really instructed DeWerff to appeal, and instead pressed the *Flores-Ortega* argument: that DeWerff was obliged to consult with him anyway but had failed to do so. In rejecting this argument, the district court explained that *Flores-Ortega*, 528 U.S. at 480, applies when there is objective evidence that a reasonable defendant would want to appeal or subjective evidence that the particular defendant demonstrated a desire to appeal. According to the court, however, Webb could prove neither, given that he had obtained and agreed to a favorable plea agreement containing an appeal waiver, and afterwards had spoken with DeWerff on at least three occasions prior to the expiration of the limitations period without ever mentioning any appeal.

The district court dismissed Webb's § 2255 as untimely and denied any certificate of appealability (COA). R. 45. When Webb moved for reconsideration, the court said:

> When a district court has denied a habeas corpus petition on procedural grounds *without reaching the petitioner's underlying constitutional claims*, a certificate of appealability will issue only if the petitioner can show (1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* (2) that jurists of reason would find it debatable whether the procedural ruling was correct. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).
>
> In this case, [Webb's] petition was clearly filed well beyond the expiration of the one year limitation period applicable to § 2255 habeas corpus actions. [Webb] failed to establish that a tolling of the limitation period would be appropriate in this instance. Therefore, reasonable jurists would not find the untimeliness of this action debatable.

R. 51 (4/2/14) (first emphasis added). The district court thus expressly avoided the merits.

Webb applied to this court for a COA and a single judge denied it, holding that "jurists of reason could not disagree . . . that Webb's § 2255 motion is time barred":

> First, the facts supporting Webb's claims—i.e., the advice that his attorney gave him at the plea stage and the attorney's failure to consult with him about an appeal—were indisputably known to Webb at the time that his conviction became final. Under the plain text of § 2255 and our precedent, whether Webb knew, or should have known, that those facts might support a legal claim is irrelevant.
>
> Second, Webb's attorney's failure to consult with him about an appeal in no way impeded the timely filing of a § 2255 motion. Thus, reasonable jurists

4

could not debate the district court's determination that the one-year limitations period ran from the date that Webb's conviction became final, and not from some later date under 28 U.S.C. § 2255(f)(2) or (4).

Finally, reasonable jurists could not debate the district court's refusal to apply equitable tolling. Webb has not shown that he pursued his rights diligently and that [an] extraordinary circumstance prevented him from filing a timely § 2255 motion. Again, the attorney's failure to consult with Webb about an appeal was no barrier to [Webb's] timely filing under § 2255.

R. 52 (citations omitted; paragraph break inserted).

But Webb petitioned for rehearing and a three-judge panel reversed that single-judge decision and granted the COA in a succinct, two-paragraph order:

Joe Edward Webb petitions for rehearing en banc of this court's order … denying his application for a [COA]. The petition was initially referred to this panel, on which the original deciding judge does not sit. The petition was then circulated to all active members of the court, none of whom requested a vote on the suggestion for an en banc rehearing. Therefore, en banc rehearing is denied.

However, the panel further reviewed the petition for rehearing and grants the petition to rehear the matter and grants Webb a [COA] on the issues of [1] whether Webb's attorney failed to consult with him about the advantages and disadvantages of taking an appeal and [2] whether Webb is entitled either to 'statutory tolling' under 28 U.S.C. § 2255(f)(2) or (4) or to equitable tolling.

R. 53. The first thing that bears mention is that the first issue is not actually at issue here, given that DeWerff frankly admitted (and the district court expressly found) that he did not consult with Webb about any appeal. Moreover, the district court expressly chose to avoid any merits aspect and instead dismissed the case solely on the procedural untimeliness.

## II.

Webb's original story was that he had expressly told DeWerff to appeal, DeWerff promised to do so, and Webb was unaware until way too late that DeWerff had not appealed. But that story was not true; at least, the magistrate judge found that it was not true. Thus, Webb now accuses DeWerff of the exact opposite: Webb now claims that he never instructed DeWerff to file the appeal because DeWerff actually warned him that he could not appeal and prevented him from appealing. *See* Webb's Apt. Br. at 3 ("lawyer indicated [Webb] could not appeal"); at

4 (Webb "was hamstrung by his lawyer's misadvice"); at 13 ("DeWerff essentially told Webb he could not appeal"); at 19 (DeWerff "created the false impression that Webb had no right to appeal at all"); at 25 ("the upshot of DeWerff's advice was simply: You cannot appeal"). So one might ask, if this new story is true, why did Webb fabricate the prior express-instruction-and-promise story? And given that this new story emerges as a result of district court's rejecting the first story as a fabrication, why would anyone believe this story either? The transcript not only demonstrates that the sentencing judge clearly told Webb that he could appeal, but that Webb clearly understood, believed, and remembered that offer, and made it (and his misremembered 10-day time limit) a central part of his express-instruction-and-promise story. So, to use the magistrate judge's phraseology, it appears "unbelievable" and "simply inconceivable" that Webb thought he could not appeal.

In any event, Webb's basic theory or argument for tolling the § 2255 deadline is that: "he should be allowed to raise his *Flores-Ortega* claim late because in order to recognize that claim existed he had to overcome the ignorance that he wrongfully suffered due to the *Flores-Ortega* violation itself [i.e., DeWerff's "misadvice"]. To overcome that ignorance and recognize that violation, he needed two things: (1) his file, so he could know and recall the precise facts of his case; and (2) awareness that the FSA issue existed and was viable, including in the Sixth Circuit." Webb's Apt. Reply Br. at 7. But Webb did not need his file to pursue this theory.

Webb's theory relies on two particular "facts": (1) that DeWerff led him to believe that he could not appeal and (2) that DeWerff did not consult with him about an appeal. These are not facts from DeWerff's file; Webb would have been fully aware of these two facts on January 21, 2011, the day that his 14 days for filing a direct appeal expired and the one-year AEDPA limitation period began. It is highly unlikely that these "precise facts" would have been in DeWerff's file.

6

Webb's second contention is that he needed to know he had a viable legal claim (i.e., "needed … awareness that the FSA issue existed and was viable … in the Sixth Circuit"). But a petitioner's ignorance of a legal claim does not toll the § 2255 deadline. *See Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012) ("The 'due diligence' clock starts ticking when a person knows or through diligence could discover the vital *facts*, regardless of when their legal significance is actually discovered." (emphasis added)); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (amended Jan. 22, 2001) ("Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance."); *Brooks v. McKee*, 307 F. Supp. 2d 902, 905-06 (E.D. Mich. 2004) ("Additionally, the AEDPA's limitations period begins to run when the petitioner knows or through due diligence could have discovered the important facts for the claim, not when the petitioner recognizes the facts' legal significance."); *Redmond v. Jackson*, 295 F. Supp. 2d 767, 771 (E.D. Mich. 2003) ("Also, under § 2244(d)(1)(D), the time under the limitations period begins to run [] when a petitioner knows, or through due diligence, could have discovered, the important facts for his claims, not when the petitioner recognizes the legal significance of the facts."). Consequently, Webb's core argument is both contrary to the pertinent facts of this case and unsupported by the established law.

Nonetheless, Webb relies on this argument to seek tolling under three possible bases: 28 U.S.C. § 2255(f)(4), 28 U.S.C. § 2255(f)(2), and/or common law equitable tolling.

Under 28 U.S.C. § 2255(f)(4), "[t]he limitation period shall run from . . . the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Webb argues that, pursuant to this provision, the starting date for his § 2255 should be either (1) the date the Supreme Court granted certiorari in *Dorsey v. United States*, 132 S. Ct. 2321 (2012) (clarifying that the FSA applied to defendants such as Webb,

7

sentenced after its enactment even if they were convicted before), or (2) the date Webb got the file from DeWerff. But the "new information" to be gleaned from *Dorsey* was merely that he had a viable legal claim, which—as explained above—is not a basis for tolling. And the only "new information" to be gleaned from DeWerff's file was extraneous or irrelevant to the pertinent facts supporting his *Flores-Ortega* claim. Webb cannot satisfy § 2255(f)(4).

Webb relies on *DiCenzi v. Rose*, 452 F.3d 465 (6th Cir. 2006), in which the sentencing judge failed to tell defendant DiCenzi that he could appeal and, apparently, his defense counsel didn't tell him either, so nobody told him and—according to his claim—he was unaware until a public defender told him some two years later. Here, the sentencing judge clearly told Webb about his right to appeal and Webb clearly understood, believed, and remembered. Consequently, in *DiCenzi*, we remanded DiCenzi's claim for the district court to determine whether he had acted with diligence to discover his right to appeal; here, the district court and magistrate judge have already had a full hearing and determined that Webb did not act with the necessary diligence. *DiCenzi* is inapposite.

Webb's second proposed basis is 28 U.S.C. § 2255(f)(2), which says "[t]he limitation period shall run from ... the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action." Webb contends that the "governmental action" that prevented him from making his § 2255 motion on time was DeWerff's *Flores-Ortega* violation and relies on *Waldron v. Jackson*, 348 F. Supp. 2d 877, 884 (N. D. Ohio 2004), saying its "logic supports th[at] conclusion." Webb's Apt. Br. at 45.

In *Waldron*, a § 2254 case, a court-appointed appellate counsel missed the appeal deadline but did not tell defendant Waldron, who only discovered the error when the Ohio appellate court dismissed his appeal as untimely some four months later. A public defender then

8

sought to file a delayed appeal but the motion was denied; moved for reconsideration, which was denied; and appealed both denials to the Ohio Supreme Court, which declined to hear the appeal. Over three years passed while Waldron pursued that delayed appeal. Following the Ohio Supreme Court's final ruling, Waldron filed his § 2254 and the government moved to dismiss it as untimely because delayed appeals do not toll the AEDPA clock. But the district court held that Waldron's appellate counsel's ineffectiveness was an impediment that prevented the timely filing of his § 2254 because Waldron "could not have brought this habeas action until the claim contained in the petition had first been presented to and exhausted in state court, including the filing of a delayed appeal." *Waldron*, 348 F. Supp. 2d at 884. Even if that analysis is proper, the distinction is noteworthy: this is a § 2255, in which Webb did not have to first exhaust his claim, so DeWerff's ineffectiveness did not prevent Webb from filing the § 2255 earlier.

Moreover, *Waldron* acknowledges that "Section 2244(d)(1)(B) requires a causal relationship between the unconstitutional state action [i.e., ineffective assistance imputed to the state] and [the petitioner's] being prevented from filing the petition." *Id*. at 583 (relying on *Winkfield v. Bagley*, 66 F. App'x 578, 583 (6th Cir. 2003) ("[The petitioner] has not alleged that [his attorney] erroneously informed him that he had no federal remedies. No connection has been established between [the attorney]'s ineffective assistance and [the petitioner]'s ability to file a federal habeas petition.")); *see also Miller v. Cason*, 49 F. App'x 495, 497 (6th Cir. 2002) (finding that even a court's failure to advise a petitioner of his appellate rights at sentencing is not a state-created impediment that prevented him from filing his federal habeas petition). But Webb cannot show a causal relationship—such as in *Waldron*—that would connect DeWerff's ineffectiveness with his own failure to timely file his § 2255 motion, because there is none.

Finally, Webb's third basis is common law equitable tolling. "Equitable tolling allows courts to review time-barred habeas petitions provided that a litigant's failure to meet a legally-

9

mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Keeling v. Warden*, 673 F.3d 452, 462 (6th Cir. 2012) (quotation marks and citations omitted). "[The] habeas petitioner must establish: (1) that he has diligently pursued his rights; and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quotation marks and citations omitted).

As we have already established, Webb cannot show that he diligently pursued his rights or that some "extraordinary circumstance" prevented his timely filing of his § 2255. Also, as we clarified in *Keeling*: "pro se status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing." *Id.* at 464.

The district court was correct. There was no reason to toll the running of the limitations period.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.

**COLE, Chief Judge, concurring in part and dissenting in part.**

I respectfully disagree with the majority to the extent it finds that Webb lacks a claim under *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). The question is not, as the majority writes, whether Webb knew that he could appeal his sentence at all. Maj. Op. 6. It is whether a rational defendant in Webb's circumstances would have wanted to appeal the sentence. *Flores-Ortega*, 528 U.S. at 480. No rational defendant would have passed up the chance to reduce his sentence by *half* under the Fair Sentencing Act ("FSA"). So, Webb's counsel should have consulted with him about an FSA-based appeal. *See id.* ("courts must take into account all the information counsel knew or should have known," including relevant statutory changes). Counsel's failure to do so constitutes a claim under *Flores-Ortega*.

But I agree that Webb's motion to vacate his sentence under 28 U.S.C. § 2255 was untimely for the reasons discussed by the majority. Webb's strongest argument concerns § 2255(f)(4), under which the filing period runs from "the date on which the facts supporting the claim . . . could have been discovered through the exercise of due diligence." We have clarified that § 2255(f)(4) is "directed at the discovery of new facts, not newly-discovered law." *Phillips v. United States*, 734 F.3d 573, 580 (6th Cir. 2013). What enabled Webb to bring his *Flores-Ortega* claim was the knowledge that he was entitled to a reduced sentence under the FSA, that is, awareness of the law governing his position. *See Dorsey v. United States* 132 S. Ct. 2321, 2331 (2012); *Gilliam v. United States*, 753 F. Supp. 2d 683, 691 (W.D. Mich. 2010). Webb possessed the facts supporting that claim, e.g., the drug quantities for which he was convicted, as early as sentencing. Thus, § 2255(f)(4) does not apply to him.